# Richmond

BOULEVARD BRIDGE CORPORATION v. CITY OF RICHMOND.

January 15, 1962.

Record No. 5377.

Present, All the Justices.

*John W. Riely* (*Eppa Hunton, IV; Harry Frazier, III; Hunton, Williams, Gay, Powell & Gibson,* on brief), for the appellant.

*James A. Eichner, Assistant City Attorney* (*J. E. Drinard, City Attorney,* on brief), for the appellee.

WHITTLE, J., delivered the opinion of the court.

■ This is an appeal by Boulevard Bridge Corporation from an order entered by the State Corporation Commission dismissing its application for a declaratory judgment.

In the application Boulevard alleged that it was incorporated as a public service corporation in 1922 for the purpose of constructing a toll bridge across the James River at Richmond; that it constructed and now operates the bridge which is essential to its purposes; that the corporation as such has the power of eminent domain; and that the City, which also has the power of eminent domain, has determined to condemn the bridge without seeking the permission of the Corporation Commission as provided by § 25-233, Code of Virginia, 1950.[1] Boulevard thus sought judgment declaring that the City was subject to the provisions of § 25-233 and therefore must obtain the permission of the Commission before seeking to condemn its property.

To this application the City filed a motion to dismiss on the grounds that the Commission had no jurisdiction over municipal corporations; that Boulevard had other adequate remedies; and that the City did not have to obtain permission of the Commission under § 25-233.

---

[1] § 25-233. CONDEMNATION OF PROPERTY OF CORPORATION POSSESSING POWER OF EMINENT DOMAIN.—No corporation shall take by condemnation proceedings any property belonging to any other corporation possessing the power of eminent domain, unless, after hearing all parties in interest, the State Corporation Commission shall certify that a public necessity or that an essential public convenience shall so require, and shall give its permission thereto; and in no event shall one corporation take by condemnation proceedings any property owned by and essential to the purposes of another corporation possessing the power of eminent domain.

The Commission, of its own motion, raised a new point and based its order dismissing Boulevard's application on the theory that the City was not bound by § 25-233 because Boulevard did not have the power of eminent domain for the reason that the 1956 amendment to Code, § 56-49, providing that no corporation shall have power to operate *turnpikes or toll roads*, deprived the bridge corporation of the power of eminent domain.[2]

While the assignment of error presents only one question for decision, *i.e.*, whether the provision of § 56-49 that no corporation shall have any power to operate *turnpikes or toll roads*, deprives an existing public service corporation operating a *toll bridge*, of its power of eminent domain, the City contends that even if the Commission was in error in basing its decision on this ground the order of dismissal should be sustained for several reasons advanced by it, which will be hereinafter treated.

Boulevard Bridge Corporation is a public service corporation organized for the purpose of constructing and operating a toll bridge across the James River from a point within the City of Richmond to a point formerly in Chesterfield County but now in the City. Its articles of association were granted September 29, 1922, under Chapter 150, Code of Virginia, 1919, entitled "Creation of Public Service Corporations Other Than Railroads." Being a public service corporation, its activities are regulated and controlled by the State Corporation Commission.

By ordinances adopted December 15, 1922, and July 9, 1924, the City granted Boulevard permission to construct the toll bridge upon stated terms. Boulevard accepted these terms and submitted construction plans and specifications to the City's Department of Public Works for approval, and constructed the bridge in accordance with the plans which had been approved as required. Since its construction the bridge has been continuously operated and maintained as a toll facility.

The ordinance adopted December 15, 1922, contained a provision

---

[2] The same jurisdictional questions were raised by the City in the case of *Southern Railway Co.* v. *City of Richmond* (*City of Richmond* v. *Southern Railway Co.*, Record No. 5378, this day decided, 203 Va. 220, 123 S.E. 2d 641) wherein the Railway Company sought a declaratory judgment that the City must have the Commission's permission under § 25-233 to condemn railroad property. The instant case and the Railway case were pending before the Commission at the same time. The Commission determined to dispose of the jurisdictional questions first, and set both Boulevard's case and the Railway case for a simultaneous hearing on the motions to dismiss. Although overruling the City's motion for dismissal in the Railway case, the Commission held that it did not have jurisdiction in Boulevard's case for the reason stated above.

that the City could acquire the bridge upon payment of two-thirds of its original cost within five years after completion. This option was not exercised.

On April 10, 1961, City Council adopted an ordinance directing the City Attorney to acquire the bridge by condemnation. Although no condemnation proceedings had been instituted, the City asserted that it would not seek the permission of the Commission under § 25-233 before proceeding to condemn. Boulevard therefore applied for the judgment declaring that the City must comply with § 25-233 before it could condemn its property.

While recognizing that the City is governed by the provisions of § 25-233 when seeking to condemn property of another corporation having the power of eminent domain, the Commission rested its decision upon the belief that Boulevard no longer had the power of eminent domain, that the section was not applicable, and hence granted City's motion to dismiss.

The Commission relied on the 1956 amendment to § 56-49 which provides that no corporation shall be empowered to operate turnpikes or toll roads. The amendment reads: "But no corporation shall hereafter have any power to operate turnpikes or toll roads. That power is reserved to be granted from time to time to political sub-divisions of the Commonwealth, or otherwise as the General Assembly shall determine."

The crux of the Commission's holding is expressed in its opinion as follows:

"So far as concerns the new public policy of the State declared by § 56-49 there is no relevant difference between a toll bridge and a toll road. The purpose of the statute is to protect the public from having to stop and pay to a private corporation toll for the privilege of proceeding along a line of travel. 'Toll bridge' is a *specific* name for that part of a toll road that crosses a river. The word 'roads' used in the statute is a generic name that includes bridges. * * *"

The conclusion of the opinion is that there is no relevant difference between a *toll bridge* and a *toll road* for the purpose of the 1956 amendment to § 56-49. We hold that there is a distinct difference arising from the facts. At the time of the amendment there were no toll roads operated by private corporations in Virginia. On the contrary there were three toll bridges (including Boulevard) in operation by private corporations. This difference in fact points up a controlling distinction in law, for the legislative history shows that the 1956 amendment to § 56-49, upon which the Commission based

its conclusion, was not designed to affect existing institutions but only to regulate future institutions.

It is true, as argued by the City, that in *Almond* v. *Gilmer*, (1949), 188 Va. 822, 838, 51 S. E. 2d 272, 278, we held that ferries and bridges were, when owned and operated by the Commonwealth, within the compass of the word "road" as used in § 185 of the Constitution. There we were dealing with the interpretation of a broad constitutional provision, not of a specific statute, in context quite different from that presented here.

The Virginia statutes disclose a different treatment of "toll roads" and "toll bridges" over a number of years. Separate requirements were provided for articles of association of a turnpike corporation and those of a toll bridge company under paragraphs (3) and (5) of § 56-47 of the Code of 1950 (repealed in 1956 as a part of the revision of the corporation law). Operation and control of turnpike companies were provided for by § 33-136, Code of 1950 (now repealed) which was a continuation of Chapter 161 (§§ 4074 through 4097a) of the Code of 1919, as amended, entitled, "Public Service Corporations Other Than Railroads."

Operation of toll bridges is still governed by §§ 33-215 through 33-226, Code of 1950, which constitute a continuation of Chapter 86 (§§ 2040 through 2072(8)), Code of 1919, as amended, entitled, "Ferries and Bridges". A special statute (§ 56-39, Code of 1950, formerly § 3771 of the Code of 1919) provides for the Commission to fix the tolls of bridge companies where not prescribed by their charters, but no such provision exists with respect to toll roads.

The statutory distinction between toll roads and toll bridges is highlighted by the failure of the General Assembly to repeal statutes governing the operation of toll bridges (§§ 33-215 through 33-226) when it specifically repealed statutes governing the operation of toll roads (§ 33-136).

The General Assembly is presumed to have known of the existence of toll bridges when the amendment to § 56-49 was enacted, and had it intended to include toll bridges in the amendment it would have done so.

We hold that the amendment to § 56-49 in no way changed the powers of private toll bridge companies, and that Boulevard Bridge Corporation continued to possess the power of eminent domain as was in fact conceded in argument before us. This conclusion removes the reason behind the Commission's order for dismissing the application.

Furthermore, its action in so doing was inconsistent with its prior action. On July 1, 1957, in a case then pending before the Commission (*Commonwealth of Virginia, at the Relation of Alvin C. Hammer* v. *Boulevard Bridge Corporation*, No. 13442) the Commission held that under § 56-49, Code of 1950, as amended, it had the power to regulate Boulevard's toll charges. There the Commission heard a complaint of excessive rates and ordered the toll charges reduced from 10¢ to 5¢. But in view of the wording of the 1956 amendment to § 56-49 that "no corporation shall hereafter have any power to operate turnpikes or toll roads," it is clear that if this provision applied to toll bridges, Boulevard would not have had any right to collect toll charges and the Commission should not have taken jurisdiction of the rate case.

■ But, says the City in its brief: "* * * (I)f the Commission's reason for sustaining the City's motion was erroneous, but its action was correct, that action should be sustained and the Commission should not be compelled to take jurisdiction."

Here it is argued that § 25-233 is not applicable because the City of Richmond is not a "corporation" within the meaning of the section. There is no merit in this contention.

Section 15-668, Code of 1950, provides: "No property shall be condemned for the purposes specified in §§ 15-6, 15-7 and 15-715 unless the necessity therefor shall be shown to exist to the satisfaction of the court having jurisdiction of the case *and no property of any public service corporation * * * shall be condemned except in accordance with §§ 15-749 to 15-754 and 25-233.*" (Italics supplied)

This section (15-668) pointedly brings the City within the purview of § 25-233.

The City argues that § 18.02 of its Charter[3] (Acts of 1948, page 175) originally enacted in 1914, amending § 22 of the City Charter

---

[3] The City is hereby authorized to acquire by condemnation proceedings lands, buildings, structures and personal property or any interest, right, easement or estate therein, of any person or corporation, whenever in the opinion of the Council a public necessity exists therefor, which shall be expressed in the resolution or ordinance directing such acquisition, whether or not any corporation owning the same be authorized to exercise the power of eminent domain or whether or not such lands, buildings, structures, or personal property or interest, right, easement or estate has already been devoted to a public use, and whenever the City cannot agree on terms of purchase or settlement with the owners of the subject of such acquisition because of incapacity of such owner, or because of the inability to agree on the compensation to be paid or other terms of settlement or purchase, or because the owner or some one of the owners is a non-resident of the State and cannot with reasonable diligence be found in the State or is unknown.

of 1870, overrides the provisions of §§ 25-233 and 15-668. This position is untenable as § 18.02 of the Charter and §§ 25-233 and 15-668 of the Code relate to the same subject matter, have the same general purpose, and are *in pari materia. Prillaman* v. *Commonwealth,* 199 Va. 401,, 405, 100 S. E. 2d 4, 7.

As said in 50 Am. Jur., Statutes, § 543, page 548:

"* * * Except where an act covers the entire subject matter of earlier legislation, is complete in itself, and is evidently intended to supersede the prior legislation on the subject, a later act does not by implication repeal an earlier act unless there is such a clear, manifest, controlling, necessary, positive, unavoidable, and irreconcilable inconsistency and repugnancy, that the two acts cannot, by a fair and reasonable construction, be reconciled, made to stand together, and be given effect or enforced concurrently."

See also 17 Mich. Jur., Statutes, § 40, page 293; 82 C.J.S., Statutes, § 365, page 799.

Section 18.02 of the Charter nowhere affirmatively relieves the City of the duty of complying with these Code sections. Had the legislature intended to enact § 18.02 for the purpose of excusing compliance with §§ 25-233 and 15-668, such a significant departure from existing law would not have been made without specifically exempting the City from compliance.

Finally it is argued that if the Commission was in error in dismissing Boulevard's application on the ground that it no longer possessed the power of eminent domain yet the application was properly dismissed because the Commission "has no power by adopting Rules of Practice and Procedure to vest itself with jurisdiction over matters justiciable in courts of record." Thus the City says that the Commission lacked the power to enact Rule 13 which reads:

"*Declaratory Judgments.*—A party having no other adequate remedy may apply for a declaratory judgment under Sections 8-578, 8-580 and 8-585 of the Code of Virginia."

We hold that § 155 of the Constitution which empowers the Commission "to prescribe its own rules of order and procedure" is sufficient to grant the Commission power to adopt Rule 13.

But, says the City, even if the Commission had the power to adopt Rule 13 the proceeding instituted by Boulevard does not fall within the provisions of the rule as Boulevard has adequate remedies in the courts.

The City, however, says in its brief:

"We concede that the Corporation Commission is the only tribunal

that can determine whether a public service corporation's property is essential to its purposes or whether it is necessary that it be condemned by another corporation which is subject to Section 25-233 of the Code, *when the Commission's permission is sought by the potential condemnor.*"

This being true, Boulevard had no "adequate remedy" in the courts of record.

The City's contention that Rule 13 affords declaratory judgment relief only where the question is judicial, and its assertion that the balancing of the interests required by § 25-233 is a *legislative* question, is without merit.

In the proceeding before the Commission it is authorized to pass upon questions of "public necessity" and "essential public convenience" as well as whether the property is essential to Boulevard's purposes. Here the Commission acts in the nature of an umpire for the purpose of safeguarding the interests of all parties affected, including the public, and its action is judicial in nature. *Stanpark Realty Corp* v. *City of Norfolk*, 199 Va. 716, 721, 101 S. E. 2d 527, 531; 29 C.J.S., Eminent Domain, § 90, page 884.

The Commission is the only tribunal which can determine promptly whether the City has the right to condemn Boulevard's property. And as "no other adequate remedy" was available, the proceeding was appropriate under Rule 13.

For the foregoing reasons the order of the State Corporation Commission dismissing Boulevard's application for a declaratory judgment is reversed and the case is remanded to the Commission with the direction that it enter an order overruling the City's motion to dismiss and providing that the City cannot condemn the property without obtaining the Commission's permission as provided by § 25-233 of the Code of Virginia, 1950.

*Reversed and remanded.*