# City Council of the City of Alexandria, et al.

## v.

# Potomac Greens Associates Partnership, et al.

Record No. 921623

April 16, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Keenan, JJ., and Poff, Senior Justice

*Philip G. Sunderland, City Attorney (Ignacio Britto Pessoa, Assistant City Attorney; William H. Crispin; Verner, Liipfert, Bernhard, McPherson & Hand,* on briefs), for appellants.

*Thomas F. Farrell, II (John F. Anderson; Joseph W. Wright, III; McGuire, Woods, Battle & Boothe,* on brief), for appellees.

JUSTICE STEPHENSON delivered the opinion of the Court.

On November 10, 1992, pursuant to Rule 5:42(a) and (e), we entered an order accepting for consideration questions of law certified to us by the United States Court of Appeals for the Fourth Circuit.[1]

## I

On January 29, 1990, Potomac Greens Associates Partnership, S/F Potomac Greens, Inc., RF&P Development Corporation, and

---

[1] This Court has original jurisdiction to answer questions of state law certified by a court of the United States or the highest appellate court of any other state. Va. Const. art. VI, § 1.

RF&P Properties, Inc. (collectively, Potomac Greens) brought a declaratory judgment action against the City of Alexandria, the City Council of the City of Alexandria, and the Planning Commission for the City of Alexandria (collectively, Alexandria) in the United States District Court for the Eastern District of Virginia seeking declaratory, injunctive, and other relief. Potomac Greens alleged that Alexandria had unlawfully denied Potomac Greens' site plan for a proposed 16-building commercial office project on an approximately 38.5-acre parcel of land in the City of Alexandria (the Site Plan).

Potomac Greens' complaint contained four counts, only one of which is the subject of this certification. Count I alleged that Alexandria had acted arbitrarily and capriciously in denying the Site Plan. Alexandria had based the denial upon Potomac Greens' refusal to comply with the Transportation Management Plan Ordinance (the TMP Ordinance or the Ordinance), adopted by Alexandria after Potomac Greens had filed its original Site Plan application. Potomac Greens claimed that Alexandria lacked the authority to enact the Ordinance, that the Ordinance was unconstitutionally vague, that Alexandria failed to give proper notices before enacting the Ordinance, and that application of the Ordinance to Potomac Greens' project was unlawful because the Ordinance had been enacted after Potomac Greens had acquired a common-law vested right to the zoning regulations in effect at the time it filed the Site Plan.

The district court ruled that the Ordinance was enacted following proper notices. However, the district court further ruled that the Ordinance (1) was unconstitutionally vague because it did "not contain reasonable precision for enforcement" and it allowed for "arbitrary application" and (2) violated Dillon's Rule because Alexandria was without express or implied power to enact it. Alexandria appealed the latter two rulings, and Potomac Greens appealed the ruling regarding notice, to the United States Court of Appeals for the Fourth Circuit.

Thereafter, we accepted for consideration the following questions of law certified to us by the Fourth Circuit:

1. Does the TMP Ordinance violate Dillon's Rule of statutory construction?
2. Is the TMP Ordinance void for vagueness under the Virginia Constitution?

3. Did the City of Alexandria's failure to give two notices of the Planning Commission hearing make the TMP Ordinance void *ab initio* when the City Charter is silent with respect to notice for Planning Commission hearings and requires one notice for City Council hearings?

4. Did, by virtue of filing its site plan application, Potomac Greens acquire a vested right in the zoning law in effect at the time of the filing, thereby precluding the City of Alexandria from applying the subsequently enacted TMP Ordinance to the site plan?

II

The facts, as set forth in the Fourth Circuit's certification order, generally are not in dispute. Potomac Greens filed its Site Plan with Alexandria on April 10, 1987, proposing to develop an approximately 38.5-acre tract of land located in the City. The land is about one mile south of the Washington National Airport and directly to the west of the George Washington Memorial Parkway. The land also is bounded on three sides by the Potomac Rail Yard. Potomac Greens proposed a commercial development of 16 office buildings, containing 2,350,000 square feet of office space and 107,100 square feet of retail space.[2]

On April 24, 1987, after a study, report, and two public work sessions on a possible traffic management zoning amendment, the Planning Commission published one notice of the proposed TMP Ordinance. The notice set forth hearing dates of May 5, 1987 for the Planning Commission and May 16, 1987 for the City Council. The City Charter requires the publication of one notice of City Council hearings. The City Charter, however, is silent regarding notice requirements for Planning Commission hearings. The City Code requires the publication of one notice of Planning Commission hearings.

---

[2] On September 3, 1986, Potomac Greens had submitted a special use permit application which proposed a mixed-use development for the same site. That project provided for 2,000,000 square feet of office space, 107,000 square feet of retail space, a 200-room hotel, and 308 residential units. Potomac Greens withdrew the application on February 27, 1987, and the parties disagree over the reason for the withdrawal. Potomac Greens implies that Alexandria unreasonably withheld approval of the special use permit. Alexandria states that the project did not comply with the City's zoning and site plan codes.

On May 5, 1987, the Planning Commission recommended that the City Council adopt the Ordinance. On May 14, 1987, the City Council published notice that it would consider the Ordinance on May 16, 1987. On May 16, 1987, the City Council enacted the Ordinance, effective immediately.

The TMP Ordinance pertains to sizeable commercial, industrial, retail, and residential developments in designated zoning districts. The Ordinance requires a developer to submit a special use permit application, together with a traffic impact study and a traffic management plan.

The City Council's review of the special use permit applications is governed by Section 7-6-325 of the TMP Ordinance. First, subsection (a) states:

> In reviewing an application for a special use permit under this article, the city council shall only consider the traffic and related impacts of the proposed use and the following characteristics of the proposed use which will determine or affect the extent of those impacts: [traffic, accessory parking use, parking overflow, safety, and location].

Next, subsection (b) states:

> The city council will approve an application for a special use permit under this article if it determines (i) that the applicant's transportation management plan is in accord with the requirements of this article, and (ii) that the transportation management plan, together with any amendments deemed appropriate by council, demonstrates that reasonable and practicable actions will be taken in conjunction with and over the life of the proposed use which will produce a significant reduction in the traffic and transportation impacts of the use. In deciding whether such a determination may be made, council may consider whether either of the following goals for the proposed use will be achieved by the transportation management plan:

> (1) that 10% to 30% of the total number of projected trips to the use during the a.m. peak hour . . . and . . . the p.m. peak hour . . . utilize a mode of travel other than the single-occupancy vehicle; or

(2) that the use attains a degree of trip dispersion which results in no more than 40% of the number of projected single-occupancy vehicle trips to the use . . . occurring during the a.m. peak hour, and no more than 40% of the number of projected single-occupancy vehicle trips from the use . . . occurring during the p.m. peak hour.

After the TMP Ordinance was adopted, Potomac Greens refused to apply for a special use permit. On May 21, 1987, the Planning Commission denied Potomac Greens' Site Plan. The City Council affirmed the Planning Commission's denial on June 24, 1987.

### III

■ We begin with the third certified question because our answer to that question is dispositive of the case:

Did the City of Alexandria's failure to give two notices of the Planning Commission hearing make the TMP Ordinance void *ab initio* when the City Charter is silent with respect to notice for Planning Commission hearings and requires one notice for City Council hearings?

Potomac Greens contends that the Ordinance was adopted without proper notices and, therefore, is void. Specifically, Potomac Greens asserts that two notices are required for a public hearing before the Planning Commission.

Alexandria concedes that only one notice was given for the Planning Commission hearing. Relying upon the City Charter and the City Code, Alexandria claims that only one notice is required.

The role of a planning commission is critical in the zoning process. Indeed, a local governing body is powerless to adopt zoning regulations until the planning commission has held a public hearing and made its recommendation to the governing body. Code § 15.1-493; *Town of Vinton* v. *Falcun Corp.*, 226 Va. 62, 65-66, 306 S.E.2d 867, 869 (1983).

To resolve this notice issue, we must examine four enactments. They consist of state law found in Code §§ 15.1-431 and -501, state law contained in § 9.12 of the City Charter, and municipal law set forth in Article P, § 7-6-303 of the City Code.

■ Code § 15.1-431, in pertinent part, provides the following:

The [planning] commission shall not recommend nor the governing body adopt any plan, ordinance or amendment until notice of intention so to do has been published once a week for two successive weeks in some newspaper published or having general circulation in such county or municipality; provided, that such notice for both the [planning] commission and the governing body may be published concurrently. Such notice shall specify the time and place of hearing at which persons affected may appear and present their views, not less than six days nor more than twenty-one days after the second advertisement shall appear in such newspaper. . . . The term two successive weeks as used in this paragraph shall mean that such notice shall be published at least twice in such newspaper with not less than six days elapsing between the first and second publication.

Code § 15.1-501 states, however, that ''[n]o provision in any municipal charter in conflict with [the chapter pertaining to zoning] shall be affected hereby.''

■ Section 9.12 of the City Charter provides that the City Council must conduct a public hearing before acting upon any zoning matter. Section 9.12 further provides that ''[a]t least fifteen calendar days' notice . . . of any such.hearing . . . shall be given by publication . . . in a newspaper of general circulation published in the city.'' The City Charter is silent about what notice is required for a Planning Commission hearing.

■ Article P, § 7-6-303 of the City Code, however, provides for only one notice for a Planning Commission hearing. Such notice must be published in a newspaper of general circulation in the City ''seven (7) working days before such hearing.''

Alexandria asserts that, in enacting the City Charter provision, ''the General Assembly clearly intended to supplant and supersede the general law notice provisions of zoning code amendments, and not to specify any particular Planning Commission notice requirement, but *to leave the decision on whether to require such notice, and if so what notice, to the City*.'' (Emphasis added.) In oral argument, Alexandria characterized the City Charter's silence as a ''conscious absence'' of any notice requirement. We do not agree with this assertion. Indeed, if Alexandria were correct, the City Council could allow the Planning Commission to act without giving any notice.

■ In the present case, a conflict exists between Code § 15.1-431 (state law) and Article P, § 7-6-303 of the City Code (municipal law) regarding the notice required for a planning commission hearing. When a conflict exists between state law and municipal law, state law must prevail. *City of Norfolk* v. *Tiny House*, 222 Va. 414, 421, 281 S.E.2d 836, 840 (1981). Indeed, an ordinance that conflicts with a state law of general character and state-wide application is invalid. *Hanbury* v. *Commonwealth*, 203 Va. 182, 185, 122 S.E.2d 911, 913 (1961); *accord Town of Vinton*, 226 Va. at 65, 306 S.E.2d at 869.

■ We recognize that the General Assembly could have prescribed in the City Charter a notice requirement for the Planning Commission that differs from that set forth in Code § 15.1-431. To do so, however, the General Assembly must have "expressly" provided therefor, *Town of Vinton*, 226 Va. at 67, 306 S.E.2d at 870, and the City Charter must have "affirmatively relieve[d]" the City of the duty to comply with Code § 15.1-431. *Bridge Corp.* v. *City of Richmond*, 203 Va. 212, 218, 123 S.E.2d 636, 640 (1962). This, however, is not what happened in the present case.

We conclude, therefore, that, pursuant to Code § 15.1-431, two notices were required for a hearing before the Planning Commission. Alexandria failed to give the requisite notices. Thus, the TMP Ordinance is void *ab initio*.

■ Alexandria represents that it routinely has enacted zoning amendments following only one notice for the public hearings before the Planning Commission. In oral argument, Alexandria asserted that an affirmative answer to the third certified question would nullify all zoning amendments since 1950. We direct, however, that our decision today shall be limited to the present case, shall operate prospectively only, and shall not affect other amendments enacted prior to our decision in this case. *See Perkins* v. *Albemarle*, 214 Va. 416, 418, 200 S.E.2d 566, 568 (1973).

Accordingly, we answer the third certified question in the affirmative.[3]

*Third Certified Question Answered in the Affirmative.*

---

[3] Because our conclusion that the Ordinance is void *ab initio* is dispositive of the case, we do not answer the other certified questions.