POTOMAC GREENS ASSOCIATES PARTNERSHIP; S/F Potomac Greens, Incorporated; Richmond, Fredericksburg & Potomac Development Corporation; Richmond, Fredericksburg & Potomac Properties, Incorporated, Plaintiffs–Appellants,

v.

CITY COUNCIL OF the CITY OF ALEXANDRIA; Planning Commission for the City of Alexandria; City of Alexandria, Defendants–Appellees.

POTOMAC GREENS ASSOCIATES PARTNERSHIP; S/F Potomac Greens, Incorporated; Richmond, Fredericksburg & Potomac Development Corporation; Richmond, Fredericksburg & Potomac Properties, Incorporated, Plaintiffs–Appellants,

v.

CITY COUNCIL OF the CITY OF ALEXANDRIA; Planning Commission for the City of Alexandria; City of Alexandria, Defendants–Appellees.

Nos. 91–1552, 91–1553.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1992.

Decided Sept. 24, 1993.

Philip Gaynor Sunderland, Office of the City Atty., Alexandria, VA, argued (Ignacio Britto Pessoa, Office of the City Atty., Alexandria, VA, William H. Crispin, and Leslie M. Alden, Verner, Liipfert, Bernhard, McPherson & Hand, Chartered, McLean, VA, on brief), for appellants.

Thomas F. Farrell, II, argued (John F. Anderson and Joseph W. Wright, III, on brief), McGuire, Woods, Battle & Boothe, Alexandria, VA, for appellees.

Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and HOWARD, United States District Judge for the Eastern District of North Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

This cross-appeal involves a dispute between a group of developers—Potomac Greens Associates Partnership; S/F Potomac Greens Incorporated; Richmond, Fredericksburg & Potomac Development Corpora-

tion; Richmond, Fredericksburg & Potomac Properties, Incorporated (collectively, "Potomac Greens"), and the City of Alexandria, the City Council of the City of Alexandria, and the Planning Commission for the City of Alexandria (collectively, "Alexandria"). Potomac Greens appeals the district court's ruling that Alexandria gave sufficient notice of the hearings preceding the adoption of the Transportation Management Plan (TMP) Ordinance. Alexandria appeals the district court's ruling that its TMP Ordinance violates the Commonwealth of Virginia's "Dillon's Rule," a rule of statutory construction, and is void for vagueness under the Virginia Constitution. Because the cross-appeal presents issues of Virginia law for which we have found no controlling precedent, we certified the relevant questions to the Supreme Court of Virginia, pursuant to that court's Rule 5:42. *See* Va.S.Ct.R. 5:42(a). Upon reviewing the Virginia Supreme Court's answer to our certified questions, we reverse the district court's determination that the notice was valid and vacate the remaining portions of its opinion as moot.

I

We first set out the pertinent facts of the case and details of the district court's decision. The facts in this case generally are not in dispute. Potomac Greens filed a site plan with Alexandria on April 10, 1987, proposing to develop a 38.5–acre tract of land located in Alexandria, Virginia. The land is approximately one mile south of Washington National Airport, immediately to the west of the George Washington Memorial Parkway, and bounded on three sides by the Potomac Rail Yard. Potomac Greens proposed a development of sixteen commercial buildings, containing 2.35 million square feet of office space and 107,100 square feet of retail space.[1]

On April 24, 1987, after a study, a report, and two public work sessions on a possible amendment to the city's traffic management

zoning ordinances, the Planning Commission of the City of Alexandria published a notice of the proposed TMP Ordinance. The notice specified hearing dates of May 5, 1987 before the Planning Commission and May 16, 1987 before the City Council. The Alexandria City Charter requires a single notice of City Council hearings, but does not address notice requirements for Planning Commission hearings. Alexandria City Charter § 9.12 (1987). The Alexandria City Code addresses the issue of Planning Commission hearings, also requiring a single notice. Alexandria City Code art. P, §§ 7–6–284, –303 (Ord. No. 2566, 05/16/81, Sec. 19).

On May 5, 1987, the Planning Commission recommended that the City Council adopt the TMP Ordinance. On May 14, 1987, the City Council published notice that it would consider the TMP Ordinance on May 16, 1987. On May 16, 1987, the City Council enacted the TMP Ordinance, which became effective immediately.

The TMP Ordinance applies to commercial, industrial, retail, and residential developments of certain sizes in designated zoning districts. The TMP Ordinance requires a developer to submit a traffic impact study and a traffic management plan along with its special use-permit application. Section 7–6–325 of the TMP Ordinance describes the City Council's review of TMP special use-permit applications. First, the section states:

> In reviewing an application for a special use permit under this article, the city council shall only consider the traffic and related impacts of the proposed use and the following characteristics of the proposed use which will determine or affect the extent of those impacts: [traffic, accessory parking use, parking overflow, safety, and location].

TMP Ordinance § 7–6–325(a). The section adds:

---

1. Previously, on September 3, 1986, Potomac Greens had submitted a special use-permit application, proposing a mixed-use development for the same site. That project called for 2 million square feet of office space, 107,000 square feet of retail space, a 200–room hotel, and 308 residential units. Potomac Greens withdrew the special

use-permit application on February 27, 1987. The parties disagree over the reason for the withdrawal. Potomac Greens implies that Alexandria unreasonably withheld approval of the special use permit, while Alexandria states that the project did not comply with Alexandria's zoning or site-plan codes.

The city council will approve an application for a special use permit under this article if it determines (i) that the applicant's transportation management plan is in accord with the requirements of this article, and (ii) that the transportation management plan, together with any amendments deemed appropriate by council, demonstrates that reasonable and practicable actions will be taken in conjunction with and over the life of the proposed use which will produce a significant reduction in the traffic and transportation impacts of the use. In deciding whether such a determination may be made, council may consider whether either of the following goals for the proposed use will be achieved by the transportation management plan:

(1) that 10% to 30% of the total number of projected trips to the use during the a.m. peak hour in the case of commercial, industrial or retail uses, or from the use during the a.m. peak hour in the case of residential uses, utilize a mode of travel other than the single[-] occupancy vehicle, and that 10% to 30% of the total number of projected trips from the use during the p.m. peak hour in the case of commercial, industrial or retail uses, or to the use during the p.m. peak hour in the case of residential uses, utilize a mode of travel other than the single-occupancy vehicle; or

(2) that the use attains a degree of trip dispersion which results in no more than 40% of the number of projected single-occupancy vehicle trips to the use ... occurring during the a.m. peak hour, and no more than 40% of the number of projected single-occupancy vehicle trips from the use ... occurring during the p.m. peak hour.

*Id.* § 7–6–325(b).

After the City Council adopted the TMP Ordinance, Potomac Greens refused to apply for a TMP special use permit. The Planning Commission then denied Potomac Greens' site plan on May 21, 1987, and the City Council affirmed the Planning Commission's denial on June 24, 1987.

On January 29, 1990, Potomac Greens brought a declaratory judgment action against Alexandria in the district court.[2] Potomac Greens asked the district court to make the following declarations: that Potomac Greens' right to develop the property as described in the site plan is vested and that Potomac Greens may not be deprived of such right by the enactment of the TMP Ordinance; that the TMP Ordinance does not apply to the site plan; that the TMP Ordinance is unconstitutionally vague; that the actions of the Planning Commission and the City Council were arbitrary and capricious and not in accordance with applicable law; that Alexandria's actions amount to a temporary regulatory taking of property without just compensation during such time as the site plan remains unapproved; and that Alexandria's refusal to approve the site plan constitutes a deprivation of Potomac Greens' rights in violation of 42 U.S.C. § 1983.

At a hearing on January 11, 1991, the district court ruled that Alexandria's notice scheme prevailed over a state statute (which requires notice to be published for two successive weeks) and, therefore, that the TMP Ordinance was enacted following proper notice. In a February 27, 1991 memorandum opinion, the district court held that TMP Ordinance (1) was unconstitutionally vague because it did "not contain reasonable precision for enforcement" and it allowed for "arbitrary application," and (2) violated Virginia's "Dillon's Rule" because Alexandria was without express or implied power to enact the ordinance. *See Potomac Greens Assocs. Partnership v. City Council,* 761 F.Supp. 416, 419–22 (E.D.Va. Feb. 27, 1991). Potomac Greens appeals the notice issue, and Alexandria appeals the two rulings striking down the substance of the TMP Ordinance.

## II

### A

This appeal raises several issues of both federal and state law. To the extent state law is implicated, we have reviewed relevant

**2.** Earlier, Potomac Greens had brought an action against Alexandria in state court. Alexandria removed the case to federal court, and the parties later agreed to dismiss the case without prejudice.

decisions of the Supreme Court and the Court of Appeals of Virginia and statutory provisions of the Virginia Code and concluded that their precedents are not controlling. Therefore, on October 20, 1992, we respectfully certified the following questions of law to the Supreme Court of Virginia:

1. Does the TMP Ordinance violate Dillon's Rule of statutory construction?

2. Is the TMP Ordinance void for vagueness under the Virginia Constitution?

3. Did the City of Alexandria's failure to give two notices of the Planning Commission hearing make the TMP Ordinance void *ab initio* when the City Charter is silent with respect to notice for Planning Commission hearings and requires one notice for City Council hearings?

4. Did, by virtue of filing its site plan application, Potomac Greens acquire a vested right in the zoning law in effect at the time of the filing, thereby precluding the City of Alexandria from applying the subsequently enacted TMP Ordinance to the site plan?

*Potomac Greens Assocs. Partnership v. City Council,* No. 91–1551, slip op. at 6 (4th Cir. Oct. 20, 1992) (order of certification).

### B

On April 16, 1993, the Supreme Court of Virginia graciously responded to our inqui-

ry, answering the third certified question in the affirmative and thereby disposing of the need to answer the remaining questions. *City Council v. Potomac Greens Assocs. Partnership,* 245 Va. 371, 429 S.E.2d 225, 227–29 n. 3 (1993).

The Supreme Court of Virginia first addressed Potomac Greens' contention that the TMP Ordinance was adopted without proper notice and, therefore, is void. More specifically, Potomac Greens contended that two notices are required for a public hearing before the Planning Commission, and, as Alexandria conceded, only one notice was given prior to the hearing in which the TMP Ordinance was discussed and approved.

To resolve the adequacy of Alexandria's notice requirement, the Virginia Supreme Court examined three enactments: state law detailing general notice requirements for zoning ordinances, *see* Va.Code· Ann. §§ 15.1–431, –501 (Michie 1989 & Supp. 1993);[3] state law governing the charter of the City of Alexandria, *see* Alexandria City Charter § 9.12;[4] and municipal law empowering the Planning Commission to meet and review proposed ordinances, *see* Alexandria City Code art. P, § 7–6–303.[5] The Virginia Supreme Court found that a conflict existed between the relevant state legislation concerning notice, Va.Code Ann. § 15.1–431, and Alexandria's municipal law detailing notice

---

3. The notice provision of the Virginia Code outlines, in pertinent part, the following:

The [planning] commission shall not recommend nor the governing body adopt any plan, ordinance or amendment until notice of intention to do so has been published once a week for two successive weeks in some newspaper published or having general circulation in such county or municipality; however such notice for both the [planning] commission and the governing body may be published concurrently. Such notice shall specify the time and place of hearing at which persons affected may appear and present their views, not less than six days nor more than twenty-one days after the second advertisement appears in such newspaper.... The term "two successive weeks" as used in this paragraph shall mean that such notice shall be published at least twice in such newspaper with not less than six days elapsing between the first and second publication.

Va.Code Ann. § 15.1–431 (Michie Supp.1993). In addition, section 15.1–501 of the Virginia

Code states that "[n]o provision in any municipal charter in conflict with [the chapter containing section 15.1–431] shall be affected hereby." Va. Code Ann. § 15.1–501 (Michie 1989).

4. Section 9.12 of the City Charter provides that the City Council must conduct a public hearing before acting on any zoning matter. Alexandria City Charter § 9.12. Section 9.12 further provides that "[a]t least fifteen calendar days' notice ... of any such hearing ... shall be given by publication ... in a newspaper of general circulation published in the city." *Id.* The City Charter is silent about what notice is required for a Planning Commission hearing.

5. The Alexandria City Code requires only one notice for a Planning Commission hearing. Alexandria City Code art. P, § 7–6–303. Such notice must be published in a newspaper of general circulation in the city "seven (7) working days before such hearing." *Id.*

requirements for the Planning Commission, Alexandria City Code art. P, § 7–6–303.

Addressing the issue of when a conflict exists between state law and municipal law, the Virginia Supreme Court held that state law must prevail. *City Council,* 429 S.E.2d at 228 (citing *City of Norfolk v. Tiny House, Inc.,* 222 Va. 414, 421, 281 S.E.2d 836, 840 (1981)). The court noted further that "an ordinance that conflicts with a state law of general character and state-wide application is invalid." *Id.* (citing *Hanbury v. Commonwealth,* 203 Va. 182, 185, 122 S.E.2d 911, 913 (1961)).

Recognizing that the Virginia General Assembly could have prescribed a notice requirement for the Planning Commission in the Alexandria City Charter that differs from section 15.1–431 of the Virginia Code, the Virginia Supreme Court held that such was not the case here. *Id.* The General Assembly must have expressly provided such notice in a manner that would "affirmatively relieve" Alexandria of the duty to comply with section 15.1–431, and no such expression is evident in the Alexandria City Charter. *Id.* (quoting *Boulevard Bridge Corp. v. City of Richmond,* 203 Va. 212, 218, 123 S.E.2d 636, 640 (1962)).

The Virginia Supreme Court concluded that, pursuant to section 15.1–431, two notices were required for a hearing before the Planning Commission, and Alexandria's failure to give the requisite notices rendered the TMP Ordinance void *ab initio. Id.,* 429 S.E.2d at 228–229. With the ordinance invalidated on the basis of its answer to the third certified question, the Supreme Court of Virginia declined to answer the remaining questions. The court limited its ruling to the present case and to a prospective application only. *Id.* (citing *Perkins v. County of Albemarle,* 214 Va. 416, 418, 200 S.E.2d 566, 568 (1973)).

## C

 Applying the Virginia Supreme Court's answer to the issues before us, we reverse the district court's order, *Potomac Greens Assocs. Partnership v. City Council,* No. CA–90–123–A (E.D.Va. Jan. 14, 1991), that notice of the Planning Commission hear-

ing was adequate. Doing so on the basis of the supreme court's wholesale invalidation of the notice requirement, we hold that the TMP Ordinance is void *ab initio.* Therefore, we do not reach the issues of the ordinance's constitutional vagueness or conflict with "Dillon's Rule."

Our holding necessarily addresses only the viability of the TMP Ordinance under procedural due process terms, as the remaining issues were mooted by our striking of the ordinance. Yet, in all likelihood, Alexandria will return to the drawing board for implementation of an ordinance similar if not identical to the one voided. We do not believe that the parties should. be bound by the unreviewed conclusions of the district court as to the ordinance's substantive enforceability and constitutionality. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39–40, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950); *Federal Trade Comm'n v. Food Town Stores, Inc.,* 547 F.2d 247, 248–49 (4th Cir.1977). Therefore, we vacate the district court's order and memorandum opinion dated February 27, 1991. *See Potomac Greens Assocs. Partnership v. City Council,* 761 F.Supp. 416 (E.D.Va.1991) (order & mem. op.).

**REVERSED IN PART; VACATED IN PART.**