Present:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Agee, JJ., and Russell, S.J.

THE COUNTRY VINTNER, INC.

v.  Record No. 052224       OPINION BY JUSTICE DONALD W. LEMONS
                                          SEPTEMBER 15, 2006
LOUIS LATOUR, INC.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

In this appeal, we consider whether the trial court erred
in dismissing with prejudice a civil action[1] for common law
conspiracy and statutory conspiracy filed by a wine wholesaler
against a winery.  At issue is the application of the doctrine
of primary jurisdiction.

I.  Facts and Proceedings Below

The conditions for the creation and continuation of all
wholesale wine distributorships, including franchise
agreements, are established in the Wine Franchise Act, Code
§§ 4.1-400 through -418 ("the Act").  Under the Act, The
Country Vintner, Inc., ("TCV") is licensed as a "wine
wholesaler" as defined in Code § 4.1-401.[2]  Louis Latour, Inc.,
("Louis Latour") is a wholly owned subsidiary of Maison Louis

---

[1] Herein, we will occasionally refer to the matter filed
in the circuit court as the "civil action" to distinguish it
from the administrative proceeding before the ABC Board.

[2] "Wine wholesaler" means any wholesale wine licensee
offering wine for sale or resale to retailers or other wine
wholesalers without regard to whether the business of the
person is conducted under the terms of an agreement with a
licensed winery.

Latour, a French winery, that imports wine into the United States.  As a licensed wine importer, Louis Latour is a "winery" as defined in Code § 4.1-401.[3]

In 1990, TCV entered into an "agreement" with Maison Louis Latour to sell wine in Virginia pursuant to Code § 4.1-401.[4]  Two years later, Maison Louis Latour certified to the Virginia Department of Alcoholic Beverage Control ("ABC Board") in a "Designation of Authorized Distributor Form" that TCV was an authorized wine distributor in "Northern, Central and Eastern Virginia."  For approximately 13 years, TCV sold

---

[3] "Winery" means every person, including any authorized representative of such person pursuant to § 4.1-218, which enters into an agreement with any Virginia wholesale wine licensee and (i) is licensed as a winery or is licensed as a Virginia farm winery, (ii) is licensed as a wine importer and is not simultaneously licensed as a wine wholesaler, (iii) manufactures or sells any wine products, whether licensed in the Commonwealth or not, or (iv) without regard to whether such person is licensed in the Commonwealth, has title to any wine products, excluding Virginia wholesale licensees and retail licensees, and has the manufacturer's authorization to market such products under its own brand or the manufacturer's brand.

[4] "Agreement" means a commercial relationship, not required to be evidenced in writing, of definite or indefinite duration, between a winery and wine wholesaler pursuant to which the wholesaler has been authorized to distribute one or more of the winery's brands of wine. The doing or accomplishment of any of the following acts shall constitute prima facie evidence of an agreement within the meaning of this definition:

1. The shipment, preparation for shipment or acceptance of any order by a winery for any wine to a wine wholesaler within the Commonwealth.

2. The payment by a wine wholesaler and the acceptance of payment by any winery for the shipment of an order of wine intended for sale in the Commonwealth.

Maison Louis Latour wine throughout Virginia, and for the final four years of that period TCV was the winery's sole distributor in Virginia.  Throughout that period, Louis Latour facilitated the importation of the wine.

In 2003, TCV's status as the exclusive distributor of Maison Louis Latour wine changed.  According to TCV's motion for judgment, Louis Latour's regional sales manager met with another wine wholesaler, Virginia Distributing Company ("Virginia Distributing").  Virginia Distributing agreed that it would "take the brand if it was 'unencumbered'" for sales in central, south, and eastern Virginia.  Louis Latour's regional sales manager assured Virginia Distributing that TCV "would not be able to compete" because Louis Latour would restrict TCV's supply of wine by utilizing TCV's depletion reports that tracked wine sales and inventory.

Similarly, Louis Latour's sales manager met with another wine wholesaler, Select Wines, Inc., ("Select Wines"), that indicated it would "love" to be a Maison Louis Latour distributor, but "suggested that Louis Latour should 'police' its [other] distributors to insure they were not selling outside their designated territory."  Louis Latour made the same assurances regarding depletion reports that were made to Virginia Distributing and explained that the reduced supply would prevent TCV from continuing to sell in northern

Virginia.  Thereafter, Louis Latour designated Virginia Distributing and Select Wines as Maison Louis Latour's wine wholesalers in their respective sales territories in Virginia, and provided them with TCV's depletion reports.

Louis Latour then submitted a new, written "Distribution Agreement" to TCV with modified terms seeking to restrict TCV's sales of Maison Louis Latour wine to Surry and Gloucester Counties.[5]  TCV rejected the proposed agreement and Louis Latour issued a "Requirements Announcement" to TCV that achieved essentially the same restrictions by prohibiting sales outside Surry and Gloucester Counties and restricting the supply of wine.  These changes significantly curtailed TCV's sales of Maison Louis Latour wine throughout the Commonwealth.

Pursuant to the administrative procedures set forth in the Act, see Code §§ 4.1-409 and 4.1-410, TCV filed a complaint with the ABC Board asserting that Louis Latour violated multiple provisions of the Act, and that the agreements with Virginia Distributing and Select Wines were illegal and void.  A hearing panel concluded that Louis Latour did violate the Act when it:  (1) established a dual distributorship; (2) attempted a unilateral amendment to the franchise agreement without good cause; (3) discriminated

_____

[5] The initial agreement was not evidenced in writing.

4

among its wine wholesalers; and (4) acted in bad faith in its dealings with TCV.

Significantly, the hearing panel concluded that Count II, alleging that Louis Latour's contracts with Virginia Distributing and Select Wines were illegal and void, was "inappropriate for determination" because the other distributors "were not parties against which relief may be granted under the Act."  Louis Latour appealed the hearing panel's decision to the ABC Board.

Prior to the Board's ruling on appeal, TCV filed a motion for judgment against Louis Latour, Virginia Distributing, and Select Wines in the Circuit Court of the City of Richmond. Counts I and II of the motion for judgment alleged common law conspiracy and statutory conspiracy against all three defendants.  Counts III and IV alleged tortious interference with TCV's contract and business expectations against Virginia Distributing and Select Wines.  As a result, Louis Latour's appeal to the ABC Board was pending at the same time that TCV's motion for judgment was pending before the trial court.

In response to TCV's motion for judgment, Louis Latour filed a "Motion to Dismiss or Stay on Grounds of Primary Jurisdiction."  Louis Latour argued that "[t]he claims alleged in the Motion for Judgment . . . would not exist but for the provisions of [the Act]" and that "the very same issues" were

5

pending before the ABC Board.  Consequently, Louis Latour asserted that the trial court was compelled to dismiss the action because primary jurisdiction over the matter was vested by the General Assembly in the ABC Board.  The trial court granted the motion and dismissed with prejudice the claims against Louis Latour; however, the trial court denied the motion with respect to Virginia Distributing and Select Wines.

In its order, the trial court stated that it "agree[d] with Plaintiff's argument that if the Act did not exist, it would still have a claim for conspiracy and tortious interference based on the alleged facts" against Louis Latour. Nevertheless, the trial court held that "action[s] for conspiracy and tortious interference involve[] the same legal issues as those contemplated in [the] ABC Board complaint, and the legislature has empowered the Board to adjudicate issues of this type under [the Act]."  On this basis, the trial court held that the Board has "primary jurisdiction" and granted the motion to dismiss with regard to Louis Latour.  With regard to Virginia Distributing and Select Wines, however, the trial court held that the Board's decision would be "irrelevant" and denied the motion to dismiss.  TCV elected to nonsuit the claims against Virginia Distributing and Select Wines, and timely filed an appeal from the dismissal of its claims against Louis Latour.

On appeal, TCV argues that the trial court erred in finding that the doctrine of primary jurisdiction applies to this case. Alternatively, if the doctrine applies, TCV argues it was misapplied when the trial court dismissed TCV's common law and statutory conspiracy claims "on the basis of preemption." Acknowledging that the trial court did not state explicitly that it based its holding on the doctrine of preemption, TCV maintains that the trial court's analysis demonstrates that preemption is the implicit basis for its holding.

## II. Analysis

### A. Standard of review

The resolution of this appeal is determined by two distinct inquiries. The first inquiry is whether the trial court had jurisdiction to resolve claims of common law conspiracy and statutory conspiracy based upon alleged wrongful conduct arising from violations of the Act. The second inquiry is whether the trial court's application of the doctrine of primary jurisdiction was proper. Both inquiries present questions of law which we review de novo. Dowling v. Rowan, 270 Va. 510, 519, 621 S.E.2d 397, 401 (2005).

### B. The Doctrine of Primary Jurisdiction

The doctrine of primary jurisdiction is a judicially created doctrine used by courts to allocate decision-making

7

responsibility between courts and agencies when jurisdiction may overlap and potential for conflicts or inconsistent decision exists.  The doctrine is recognized in the federal courts and in many states.  E.g., Reiter v. Cooper, 507 U.S. 258, 268 (1993); Birmingham Hockey Club, Inc. v. Nat'l Council on Comp. Ins., Inc., 827 So. 2d 73, 82 (Ala. 2002); Capital Tel. Co. v. Pattersonville Tel. Co., 436 N.E.2d 461, 466 (N.Y. 1982); Foree v. Crown Cent. Petroleum Corp., 431 S.W.2d 312, 316 (Tex. 1968).  The doctrine has been used to preclude court consideration of an entire claim and has also been used to separate for agency consideration issues within a claim:[6]

> If a court concludes that a dispute brought before the court is within the primary jurisdiction of an agency, it will dismiss the action on the basis that it should be brought before the agency instead.  Similarly, if a court concludes that an issue raised in an action before the court is within the primary jurisdiction of an agency, the court will defer any decision in the action before it until the agency has addressed the issue that is within its primary jurisdiction.  The court retains jurisdiction over the dispute itself and all other issues raised by the dispute, but it cannot resolve that dispute until the agency has resolved the issue that is in its primary jurisdiction.

---

[6] An example of precluding judicial consideration of an entire dispute is illustrated by Texas & Pac. R.R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426 (1907).  However, the court may retain its power over a dispute and refer an issue in the dispute to an agency for determination.  See Reiter, 507 U.S. at 268-69 (1993).

2 Richard J. Pierce, Jr., <u>Administrative Law Treatise</u> 917 (4th ed. 2002) (emphasis added).

In the matter before us, Louis Latour maintains that when the General Assembly enacted the Wine Franchise Act, it intended that the remedies contained therein would be exclusive for any actions based upon conduct defined as wrongful by the Act.  By contrast, TCV acknowledges that violations of the Act must be heard by the ABC Board, but it maintains that a cause of action for common law or statutory conspiracy may be maintained in the courts because the Act does not confer jurisdiction upon the ABC Board to hear such claims and the Act does not abrogate the common law cause of action nor preempt the statutory cause of action.

The trial court held that the causes of action for common law and statutory conspiracy involve "the same legal issues as those contemplated in [the] ABC Board complaint" and held that the legislature "has empowered the Board to adjudicate issues of this type."  As a consequence, the trial court dismissed the conspiracy claims with prejudice.  Herein lies the origin of TCV's claim that, without expressly stating, the trial court decided that the Act precluded the conspiracy claims.

C.  Preemption and Jurisdiction of the Trial Court

The first question we address is whether, after the Act, TCV can bring common law and statutory claims for

9

conspiracy against Louis Latour. To preclude these claims, the Act must abrogate common law conspiracy and repeal expressly or by implication a claim for statutory conspiracy.

"A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." Commercial Business Sys. v. BellSouth Servs., 249 Va. 39, 48, 453 S.E.2d 261, 267 (1995) (citing Hechler Chevrolet v. General Motors Corp., 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985) and Werth v. Fire Adjust. Bureau, 160 Va. 845, 855, 171 S.E. 255, 259 (1933)). When one party to a contract conspires with a third party to induce the breach of the contract, an action for conspiracy will lie. Worrie v. Boze, 198 Va. 533, 95 S.E.2d 192 (1956).

The question whether a statute abrogates the common law is resolved by familiar principles:

> The common law will not be considered as altered or changed by statute unless the legislative intent is plainly manifested. A statutory change in the common law is limited to that which is expressly stated or necessarily implied because the presumption is that no change was intended. When an enactment does not encompass the entire subject covered by the common law, it abrogates the common-law rule only to the extent that its terms are directly and irreconcilably opposed to the rule.

Couplin v. Payne, 270 Va. 129, 136, 613 S.E.2d 592, 595 (2005) (citing Boyd v. Commonwealth, 236 Va. 346, 349, 374 S.E.2d 301, 302 (1988)). See also Schlegel v. Bank of America, 271 Va. 542, 553-55, 628 S.E.2d 362, 368 (2006) (only those common law claims "fall[ing] squarely within the confines" of an applicable statute are preempted thereby).

Statutory conspiracy is defined in Code § 18.2-499(A), which states in pertinent part: "Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . . ." Code § 18.2-500 provides that a party aggrieved by a violation of Code § 18.2-499 may obtain civil relief in the form of treble damages, costs, and attorney's fees.

"The implied repeal of an earlier statute by a later enactment is not favored. There is a presumption against a legislative intent to repeal where the later statute does not amend the former or refer expressly to it." Sexton v. Cornett, 271 Va. 251, 257, 623 S.E.2d 898, 901 (2006) (citing Albemarle County v. Marshall, 215 Va. 756, 761, 214 S.E.2d 146, 150 (1975)). More specifically, "a later act does not by implication repeal an earlier act unless there is such a clear, manifest, controlling, necessary, positive,

unavoidable, and irreconcilable inconsistency and repugnancy, that the two acts cannot . . . be reconciled." Boulevard Bridge Corp. v. City of Richmond, 203 Va. 212, 218, 123 S.E.2d 636, 640 (1962).  Therefore, even if the Act contained language that created an "apparent conflict" with the civil conspiracy statute, we would be bound, "if reasonably possible, to give them such a construction as [would] give force and effect to each."  Sexton, 271 Va. at 257, 623 S.E.2d at 901 (citing Scott v. Lichford, 164 Va. 419, 422–23, 180 S.E. 393, 394 (1935)).

The provisions of the Act address specific conduct by which a winery or a wine wholesaler might unlawfully breach its franchise agreement; however, it does not expressly address the law of conspiracy.  The Act is applicable only to agreements between wineries and wine wholesalers.  Code § 4.1-402.  It sets forth no rights or remedies concerning third parties, such as other wine wholesalers, that are not parties to a particular franchise agreement.  In accordance with this distinction, the hearing panel dismissed any complaints pertaining to conduct by Virginia Distributing and Select Wines because they "were not parties against which relief may be granted under the Act."

Louis Latour argues that TCV's motion for judgment amounts to nothing more than "garden variety" violations of

12

the Act that have been "dressed up" for a separate civil action.  In this case, TCV's motion for judgment plainly alleges numerous violations of the Act which also are the basis for its conspiracy allegations.  Most significantly, TCV conceded to the trial court that "the illegality that is underlying this, Your Honor, is based upon specific provisions of the . . . Act."  Louis Latour maintains that because the wrongful conduct supporting the conspiracy claims arose from the Act, there can be no remedies except those provided in the Act.  The Act prohibits certain conduct and provides remedies for such violations.  However, the Act does not address conspiracy to commit such violations.  We noted the distinction between the conspiracy to commit a wrongful act and the act itself in Worrie:

> The cause of action against Worrie for the breach of his contract involved the acts and conduct of Worrie alone.  No conspiracy with Baily, or anyone else, was necessary to maintain that action.  Mere proof of the breach by Worrie was sufficient.  On the other hand, the cause of action against Worrie in the present suit is based upon his alleged tort in conspiring with Baily to breach the Worrie contract.  Here the plaintiffs were required to prove something more than the mere breach by Worrie.  An essential element in the present case, absent in the first, is the alleged conspiracy between Worrie and Baily, as the result of which Worrie was induced to breach his contract.

198 Va. at 539, 95 S.E.2d at 197.

TCV's administrative complaint against Louis Latour is limited to the question whether Louis Latour's conduct violated the Act. The civil action contains allegations that Louis Latour conspired with others to commit violations of the Act. TCV maintains that the Act does not address actions for conspiracy nor does it have the power to grant relief against the other wine wholesalers.

The discrete question we must address is whether a conspiracy action based upon a "wrong" arising from the provisions of the Act may be maintained outside of and in addition to the administrative proceedings before the ABC Board. A legislative intent to supplant a common law action for conspiracy is not plainly manifested in the Act. Nothing in the Act explicitly or implicitly prohibits a statutory conspiracy action based upon conduct declared wrongful by the Act. As clearly exhibited in Worrie, the wrongful act and a conspiracy to commit the wrongful act are two separate causes of action. The violation of the Act is covered by the Act, but a conspiracy to violate the Act is not. We cannot say that there is "clear, manifest, controlling, necessary, positive, unavoidable, and irreconcilable inconsistency and repugnancy" between the Act and a civil action for statutory conspiracy such that the two cannot be reconciled. Boulevard Bridge, 203 Va. at 218, 123 S.E.2d at 640. The conclusion

14

that the Act does not preempt a common law conspiracy claim or a statutory conspiracy claim is further supported by the language of the Act itself which "define[s] certain rights and remedies," and establishes conditions for wine distribution "to the full extent consistent with the laws and Constitutions of the Commonwealth and the United States."  Code §§ 4.1-400(3) and (4) (emphasis added).  Therefore, we hold that the trial court erred in holding that, on these facts, the Act preempted or abrogated a civil action for statutory conspiracy and common law conspiracy against Louis Latour.

D.  Application of Primary Jurisdiction Doctrine

Having determined that TCV's conspiracy claims are not within the jurisdiction of the ABC Board and are not precluded by the Act, the question remains whether the doctrine of primary jurisdiction should be employed nonetheless.  The doctrine is "specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency."  Reiter, 507 U.S. at 268.  The doctrine "seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within a regulatory regime."  Pharmaceutical Res'ch & Mfrs. of Am. v. Walsh, 538 U.S. 644, 672 (2003) (Breyer, Scalia, Thomas, and O'Connor, JJ., concurring).

When utilized to address issues within a claim, the doctrine of primary jurisdiction is meant to merely postpone, not preclude, judicial action in a particular case. "[I]t governs only the question whether a court or an agency will initially decide a particular issue, not the question whether a court or an agency will finally decide the issue." Sears, Roebuck & Co. v. San Diego Co. Dist. Council of Carpenters, 436 U.S. 180, 199 n.2 (1978). A trial court stays the proceedings before it "so as to give the parties reasonable opportunity to seek an administrative ruling" on the matter within the agency's expertise. Reiter, 507 U.S. at 268 (citations omitted). See also Mitchell Coal Co. v. Pennsylvania R. Co., 230 U.S. 247, 267 (1913) (further action by district court should be "stayed" until the Commission rules on the issue of reasonableness).

Primary jurisdiction should not be confused with exhaustion of administrative remedies. As the Supreme Court of the United States explained:

> "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special

16

> competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

United States v. Western Pac. R.R. Co., 352 U.S. 59, 63-64 (1956).

In this case, the trial court held that the ABC Board had "exclusive" jurisdiction over the claims before it, and then applied the doctrine of primary jurisdiction to dismiss with prejudice TCV's claims against Louis Latour. As previously discussed, the trial court erred in this holding. Consequently, we now consider whether the doctrine of primary jurisdiction should apply in this case to permit the agency to initially decide issues within the dispute.

"No fixed formula exists for applying the doctrine of primary jurisdiction," but "[i]n every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." Western Pac. R.R. Co., 352 U.S. at 64. The framework set forth in National Communications Ass'n v. American Tel. & Tel. Co., 46 F.3d 220, 222-23 (2d Cir. 1995), provides the appropriate considerations for deciding whether a trial court should apply the doctrine of primary jurisdiction to stay its proceedings:

> (1) whether the question at issue is within the conventional experience of judges or whether it

17

> involves technical or policy considerations within the agency's particular field of expertise;
> (2) whether the question at issue is particularly within the agency's discretion;
> (3) whether there exists a substantial danger of inconsistent rulings; and
> (4) whether a prior application to the agency has been made.

See also Environmental Tech. Council v. Sierra Club, 98 F.3d 774, 789 (4th Cir. 1996).

TCV had already filed an administrative complaint with the ABC Board claiming that Louis Latour's conduct violated the Act. TCV concedes that violations of the Act are within the particular, superior expertise of the ABC Board. It is uncontested that the ABC Board is the body charged with interpretation and implementation of the Act, and, where appropriate, providing appropriate relief for violations of the Act. Finally, the timing of the civil action and the ABC Board proceedings presented a risk of inconsistent rulings regarding violations of the Act. Upon these considerations, we hold that the doctrine of primary jurisdiction should apply in this case for the purpose of determining whether the wrongful acts underlying the conspiracy claims occurred.

When applying the doctrine of primary jurisdiction, a trial court may stay the proceedings or dismiss the action without prejudice. Because the administrative proceeding will involve appeals to the circuit court, the Court of Appeals,

18

and perhaps this Court, the better choice in this case is to stay the proceedings for common law conspiracy and statutory conspiracy.  <u>Syntek Semiconductor Co. v. Microchip Tech.</u>, 307 F.3d 775, 782 (9th Cir. 2002).  Otherwise, TCV may be required to file the action anew to avoid the statute of limitations before appeals in the administrative proceeding have concluded.

## III.  Conclusion

The trial court erred in concluding that it did not have jurisdiction to resolve claims of common law conspiracy and statutory conspiracy based upon alleged wrongful conduct arising from violations of the Act.  While the trial court did have jurisdiction over the conspiracy claims and the ABC Board did not, certain issues in the case are more appropriately resolved by the ABC Board.  Consequently, the doctrine of primary jurisdiction applies and the trial court should stay the judicial proceedings until the agency has had the initial opportunity to resolve matters within its special competence and any applicable appeals have concluded.

The judgment of the trial court will be reversed and the case remanded for further proceedings not inconsistent with this opinion.

<u>Reversed and remanded</u>.

19