### Richmond

GILBERT FRANCIS ROBERTS, SR.

v.

ROBERTA L. ROBERTS

June 18, 1982.

Record No. 800344.

Present: All the Justices.

*Burke F. McCahill (Quinlan H. Hancock, P.C.,* on brief), for appellant.
*Ilona Ely Freedman* for appellee.

RUSSELL, J., delivered the opinion of the Court.

Gilbert and Roberta Roberts were married on December 31, 1968. Their only child was born the following year. On July 25, 1975, Roberta filed this suit for divorce against Gilbert alleging that he had constructively deserted her on June 1, 1975. Gilbert filed an answer and cross-bill on August 12, 1975, charging her with desertion "existing from the first day of June 1975, and continuing to the present time." Each party asked for a decree of divorce *a mensa et thoro,* with leave to merge the same into a divorce *a vinculo matrimonii* upon the expiration of the statutory period. At a *pendente lite* hearing, held on March 19, 1976, both parties testified that they were living under the same roof, and occasionally engaged in social activities and meals together, but that they were sleeping apart.

On July 5, 1976, pursuant to his employer's orders, Gilbert moved to Nicaragua, where he remained for over five months. The parties did not communicate with each other during this time. On December 1, 1976, while Gilbert was in Nicaragua, Roberta and the child left the marital home. The parties did not thereafter live together.

On July 21, 1977, both parties, with leave of court, amended their pleadings. Each realleged the desertion charge which was contained in the original pleadings, and each added an alternative prayer for divorce on the ground of one year's separation.

The matter was referred to a commissioner in chancery. At the commissioner's hearing on July 25, 1977, Roberta testified that the parties had physically separated on July 5, 1976, the date on which Gilbert had left for Nicaragua, and that they had not lived

together since that time. Gilbert attempted to introduce evidence that Roberta had deserted him by refusing to accompany him to Nicaragua, and had later moved from the marital home. The commissioner, however, ruled that Gilbert's evidence was inadmissible because it related to matters which had occurred after Roberta had filed her original bill of complaint on July 25, 1975.

The commissioner reported to the court that although Gilbert had cursed and insulted Roberta, ordering her to leave the home in June 1975, his conduct had not amounted to extreme cruelty entirely subversive of family relations. In fact, the commissioner found that the parties had continued to have sexual relations until the suit was filed on July 25, 1975. Thus the commissioner reported that Roberta had failed to prove that Gilbert had constructively deserted her, and that he had failed to prove that she had deserted him on June 1, 1975. The commissioner further reported that Gilbert was precluded as a matter of law from obtaining a divorce from Roberta upon any ground of desertion occurring after the institution of the divorce proceeding. The commissioner recommended that Roberta be granted a divorce *a vinculo matrimonii* on the ground of one year's separation.

The commissioner's report was filed May 4, 1978. Gilbert filed exceptions to the report which were heard by the court on August 31, 1978. The court overruled the exceptions and confirmed the commissioner's report. It also heard evidence on Roberta's motion for spousal and child support, custody, costs, and counsel fees. The court announced its ruling from the bench and directed counsel to frame an appropriate decree.

From the hearing on August 31, 1978, when the court made the foregoing rulings, until January 4, 1979, counsel did not present a decree to the chancellor for entry because they were unable to resolve their conflicting trial calendars and disagreed as to the wording of the prepared decree. During this period, Gilbert apparently had Roberta under surveillance. On November 2, 1978, Gilbert filed a notice, attached to a motion alleging that Roberta had been "engaging in acts of sexual intercourse with an unidentified male," and praying for leave to file an amended bill of complaint raising the new ground of adultery. Before the court ruled on this motion, Gilbert filed a new suit (Chancery 60499) charging Roberta with acts of adultery on November 5, 10, and 11 and December 6, 7, 8, and 9 of 1978.

At a hearing on January 12, 1979, the parties argued their dispute concerning the wording of the proposed final decree, the husband's motion to file an amended bill of complaint in this suit, and the husband's motion to consolidate this suit with Chancery 60499. The court took these matters under advisement until October 22, 1979, when it issued a memorandum opinion in which it found the motion to file a supplemental bill of complaint to be untimely on the ground that it had been filed after the case had been decided by the court's oral ruling on August 31, 1978. The court also denied Gilbert's motion to consolidate Chancery 60499 with this suit. It ruled that Gilbert was barred from using Roberta's alleged adultery as a ground for divorce or as a bar to her right to the spousal support previously adjudicated. On November 9, 1979, the court, by a letter opinion, reconsidered a part of the foregoing ruling. It withdrew its ruling that the motion to file a supplemental bill of complaint was untimely. However, it noted that in the new suit (Chancery 60499), which Gilbert sought to consolidate with the case at bar, the first act of adultery charged against Roberta was alleged to have occurred on November 5, 1978, three days *after* the filing of Gilbert's motion for leave to file an amended bill of complaint alleging adultery. Thus, it was apparent that when Gilbert had asked, on November 2, 1978, for leave to charge Roberta with adultery, he had lacked evidence of any adultery. The court adhered to its ruling denying Gilbert leave to raise this ground, either by amendment in this suit or by consolidation with Chancery 60499. A final decree was entered on November 30, 1979, granting Roberta a divorce on the ground of one year's separation, custody of her child, child support, spousal support, costs, and counsel fees.

Gilbert appeals, assigning as error: (1) the trial court's confirmation of that part of the commissioner's report which had precluded him, as a matter of law, from alleging and proving his wife's desertion during the pendency of the suit, and (2) the court's refusal to grant him leave after the oral ruling from the bench, to file an amended bill of complaint, alleging adultery.

We have consistently held, in a series of cases beginning with *Craig v. Craig,* 118 Va. 284, 87 S.E. 727 (1916), and most recently in *Alls·v. Alls,* 216 Va. 13, 216 S.E.2d 16 (1975), that one spouse is not guilty of legal desertion in separating from the other after the institution of a suit for divorce or during its pendency. Conceding that the law is settled on this point, Gilbert ar-

gues that some exceptions should be made to this rule in cases where the party filing the original suit continues to live in the marital abode for a long period of time, or where the original suit turns out to be frivolous, a mere sham created in order to permit the complainant to desert the defendant with impunity. Gilbert asks us to consider authorities from other jurisdictions in which similar limitations have been adopted. He argues that an excessively rigid application of the *Alls* rule would permit a wife, who wished to desert her husband, but also wished to claim spousal support from him, to institute a frivolous suit against him, based on charges for which she has no evidence, and thereafter to desert him. She could later amend her suit to claim a divorce on the ground of one year's separation, but he would be barred from asserting her desertion as a defense to her claim for spousal support.

We recognize the force of this argument. Equitable rules should not be so inflexibly applied as to shield fraud or oppression. We do not, however, view this as a case in which the equities demand the creation of an exception to the *Alls* rule. The wife's bill of complaint was far from frivolous. She alleged serious misconduct on her husband's part which, although not amounting to constructive desertion, justified her resort to litigation. She remained under the marital roof because she lacked resources to go elsewhere, and because she thought that Gilbert's departure for Nicaragua, which was delayed for nearly a year, was imminent. However, the most cogent reason for not making an exception to the *Alls* rule in this case is that Gilbert, at the time of Roberta's departure, had filed a cross-bill of complaint charging her with desertion. Gilbert's argument as to the inequity of permitting a complainant to leave a defendant with impunity has no force when applied to one who leaves the marital home after being sued for divorce by the other party. Physical separation in such circumstances is always justified, and may even be commendable. *Plattner v. Plattner,* 202 Va. 263, 266, 117 S.E.2d 128, 130-31 (1960); *Hudgins v. Hudgins,* 181 Va. 81, 87, 23 S.E.2d 774, 777 (1943).

In seeking to charge the wife with adultery allegedly occurring after the court's oral decision was announced, the husband erroneously sought leave to file an "amended" cross-bill. He should have asked leave to file a supplemental cross-bill of complaint.

One of the chief offices of a supplemental bill is to bring into the case new events referring to, and supporting, or affecting rights and interests already mentioned, which have arisen **subsequently to the filing of the original bill.** [Citations omitted].

*Bibb* v. *American Coal Co.,* 109 Va. 261, 266, 64 S.E. 32, 34 (1909). However, we may disregard the distinction here because both parties and the trial court treated the husband's motion as if it had been a prayer for leave to file a supplemental cross-bill.

In *Rosenberg* v. *Rosenberg,* 210 Va. 44, 169 S.E.2d 251 (1969), we held, on different facts, that the trial court had erred in refusing a husband leave to file a supplemental bill of complaint on the ground of the wife's adultery, alleged to have occurred after the commissioner's hearing, which had resulted in a report favorable to the wife. Nevertheless, a party's right to file late pleadings, whether they be amended or supplemental, rests in the sound discretion of the court by virtue of Rules 1:8, 1:9, and 2:13. In the present case, when the trial court, on January 12, 1979, heard Gilbert's motion to file an amended cross-bill, it also had before it Gilbert's bill of complaint in Chancery 60499, which he was also asking to consolidate herewith. The court noted, from an inspection of that pleading, that the first act of adultery allegedly occurred three days after Gilbert's motion for leave to file his amendment charging such adultery. The court was free to conclude that Gilbert's motion was not made in good faith, but was merely an effort to avoid the spousal support previously awarded, in the hope that evidence of adultery might later be found. In these circumstances we cannot say that the trial court abused its discretion in denying the husband's motion.

For these reasons, the decree appealed from will be

*Affirmed.*