# Andrew D. Kole, et al.

## v.

# City of Chesapeake, et al.

Record No. 930517

January 7, 1994

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell, and Keenan, JJ., and Cochran, Retired Justice

*John F. Cahill (Grayson P. Hanes; John Holland Foote; Hazel & Thomas,* on briefs), for appellants.

*William F. Devine (Robert C. Nusbaum; Patrick C. Devine, Jr.; Ronald S. Hallman, City Attorney; Kathleen A. Dooley, Assistant City Attorney; Hofheimer, Nusbaum, McPhaul & Samuels,* on brief), for appellees.

JUSTICE STEPHENSON delivered the opinion of the Court.

In this declaratory judgment proceeding, landowners challenge the validity of a city's rezoning ordinance. On appeal, we determine

whether the trial court erred in dismissing with prejudice the landowners' bill of complaint on the ground that it was not filed within 30 days of the enactment of the rezoning ordinance, as required by Code § 15.1-493(G).

On September 13, 1991, Seven Springs, Inc. (Seven Springs), a Virginia corporation, and Andrew D. Kole, Seven Springs' sole shareholder (collectively, the Landowners), filed a bill of complaint against the City of Chesapeake (the City) and the City Council, seeking a declaratory judgment, injunctive relief, and damages. The Landowners alleged that the City Council violated Virginia law and federal law in its attempt to rezone the Landowners' property. More specifically, the Landowners claimed that (1) the City Council's action constituted unlawful "piecemeal downzoning" and "spot zoning;" (2) the City Council did not initiate the rezoning as required by law; (3) the rezoning ordinance was void *ab initio* because the City Council failed to provide notice, advertisement, and public hearing as required by statute; and (4) even if the ordinance were valid, the City Council (a) violated the Landowners' vested rights under existing law, (b) violated their rights to statutory and constitutional due process and their constitutional right to equal protection, and (c) in effect, took their property without just compensation, in violation of the Federal and Virginia Constitutions.

In response to the bill of complaint, the City filed a "Demurrer and Special Plea in Bar and Plea of Statute of Limitations." By this pleading, the City asserted, *inter alia* that the Landowners failed to challenge the rezoning ordinance within 30 days of its enactment and, therefore, that "all aspects of [the] suit constituting such a challenge or being derivative of such a challenge are time-barred and must be dismissed."

Thereafter, the Landowners filed a "Statement in Opposition to the City's Plea in Bar" disputing the City's factual allegations and requesting an evidentiary hearing on the plea. The Landowners also requested leave to file an amended bill of complaint and lodged a proposed amended bill with the motion to amend.

The trial court refused the Landowners' motion to file an amended bill of complaint and declined to conduct an evidentiary hearing on the City's plea. Relying solely upon the allegations in the Landowners' bill of complaint, the trial court, by order entered January 15, 1993, granted the City's "Plea of the Statute of Limitations," concluding that all of the Landowners' claims were time-barred because their bill of complaint was not filed within 30 days of the enactment of the rezoning ordinance, as required by Code

§ 15.1-493(G). We awarded the Landowners an appeal from the trial court's judgment.

We consider those facts that are alleged in the bill of complaint and in the proffered amended bill of complaint. Seven Springs owns approximately 52.425 acres of land in the City, consisting of one tract containing approximately 44.9 acres and another tract containing approximately 7.5 acres. Prior to the challenged rezoning ordinance, the 44.9-acre tract was zoned in the R-10s zoning district (the R-10s tract), and the seven-acre tract was zoned in the Office and Industrial (O & I) zoning district (the O & I tract). The R-10s zoning classification gave Seven Springs the right to develop at least 117 single-family dwellings on the R-10s tract. The O & I zoning classification permitted a variety of uses, including a multi-unit retirement village, on the O & I tract.

Kole is also the sole shareholder of Bedford Golf, Inc. (Bedford), a Virginia corporation. Bedford owns a tract in the City containing approximately 4.9 acres that, prior to the contested rezoning, was zoned in the R-10s district.

The Seven Springs and Bedford properties were originally part of a tract of approximately 480 acres known as the "Trust property." About 1978, the Trust property was zoned for a combination of residential and commercial uses. In 1984, the zoning was modified to allow a combination of residential, institutional, and commercial uses.

Thereafter, Vidco, Inc. (Vidco) acquired portions of the Trust property and proceeded to develop the land by constructing roads and other improvements. One of its developments was a residential subdivision known as "Las Gaviotas." The Seven Springs and Bedford properties are part of and adjacent to the Las Gaviotas development; consequently, Vidco's improvements necessarily also serve Seven Springs and Bedford. During the course of developing its property, however, Vidco experienced financial difficulties and, as a result, was unable to acquire the rest of the Trust property as it had planned to do.

In 1988, the remaining portions of the Trust property, consisting of the R-10s tract and the O & I tract, were acquired by other investors. Among the improvements that Vidco had made on its property were a golf course and a clubhouse. The investors had allowed Vidco to use a portion of their R-10s tract for eight holes of an 18-hole golf course.

Kole first became involved in the development of the Trust property in 1988 when he provided Vidco with additional funds to finance its on-going improvements to its property. In January 1989, however, Vidco declared bankruptcy, and, shortly thereafter, its property was sold at foreclosure.

In April 1989, Seven Springs acquired the R-10s tract and the O & I tract. Previously, City officials had assured Seven Springs that the properties could be developed, without restrictions, under the then-existing R-10s and O & I zoning classifications.

Following Vidco's financial demise, continued operation of the golf course was not economically feasible. Therefore, Seven Springs decided to create a residential development on its R-10s tract. Consequently, on November 28, 1990, Seven Springs submitted to the City a plan to develop 117 single-family residences on the R-10s tract. The City Council, however, refused to process or approve the plan. According to Seven Springs, the Council refused to act on the plan because it was "engaged in a concerted course of action to preclude any use of the property that was inconsistent with [the City's] desire that the property remain as undeveloped open space for public use."

Instead of acting on Seven Springs' plan, the City Council asked the City planning commission to "review the zoning classification for the Las Gaviotas Golf Course and provide a recommendation as to its current appropriateness." On February 13, 1991, the planning commission recommended that Council down zone all of Seven Springs' and Bedford's properties to the C-1 (conservation) zoning district.

On February 19, 1991, the City Council voted to rezone a portion of the R-10s tract to the C-1 district but postponed action on the O & I tract and Bedford's property. On July 16, 1991, the Council voted to rezone Seven Springs' remaining property from the R-10s and O & I districts to the C-1 district and to rezone Bedford's property to the C-1 district. According to Seven Springs, "[t]he uses permitted in the C-1 district are so extremely limited, that all viable economic uses are effectively prohibited."

■ The City's Charter, in section 3.07, provides that no ordinance shall be effective for at least 30 days after the Council's final passage. During the 30-day period, the effect of a Council decision may be delayed further by a petition seeking to amend or repeal Council's action. Once a petition is filed, Council may repeal or amend the ordinances within 30 days of the date the petition is filed. If Council fails to amend or repeal the ordinance during the 30-day period, the circuit court is authorized to order a referendum in order to submit the ordinance to the voters by a special election.

■ As previously noted, the trial court dismissed the bill of complaint on the ground that it was not filed within 30 days of City Council's decision. The trial court based its decision upon Code § 15.1-493(G) which provides, in pertinent part, as follows:

Every action contesting a decision of the local governing body adopting . . . a proposed zoning ordinance or amendment thereto . . . shall be filed within thirty days of such decision . . . . However, nothing in this subsection shall be construed to create any new right to contest the action of a local governing body.

The Landowners contend that their action was timely filed. They assert that the trial court failed to apply the 30-day time period in the context of the City Charter's procedures for adopting ordinances. The Landowners claim that the City Council's decision was not final and effective until the referendum process was concluded.

The City contends, on the other hand, that Code § 15.1-493(G) is plain and unambiguous and requires that an action be filed within 30 days of City Council's decision. The City asserts that "Seven Springs . . . confuses the date of Council's decision with the effective date of the ordinance adopted."

The City, by its Charter, has a unique process for adopting ordinances. Unlike most local governments, the people of the City, not the governing body, are empowered to make the final decision about ordinances. Thus, no ordinance can take effect or exist until the referendum process is finished. *R. G. Moore Building Corp.* v. *Committee,* 239 Va. 484, 490, 391 S.E.2d 587, 590 (1990). While City Council's decisions are subject to the process, "[t]he original zoning . . . remains in place." *Id.*

Code § 15.1-493(G) and the City Charter are enactments of the General Assembly. Therefore, they must be read and construed together in order to give full meaning, force, and effect to each. *County of Greensville* v. *City of Emporia,* 245 Va. 143, 149, 427 S.E.2d 352, 356 (1993).

In the present case, the City Council rendered its decision on July 16, 1991. This, in turn, triggered the referendum process set forth in the City Charter, and the Council's decision was subject to repeal or modification until the conclusion of the referendum process. Consequently, judicial review before the conclusion of the referendum process would have been premature and subject to dismissal because there existed no final zoning decision. Therefore, the City Council's decision did not become final and subject to judicial review until 30 days after Council acted. Consequently, the 30-day time period prescribed in Code § 15.1-493(G) commenced to run on August 16, 1991.

We conclude, therefore, that the Landowners' bill of complaint was timely filed on September 13, 1991. We note, however, that a controversy exists about what, if any, rezoning actually occurred on

February 19, 1991. Consequently, on remand, evidence must be produced to resolve this dispute.

■ Assuming some rezoning became final 30 days after City Council's February 19, 1991 action, the time period in Code § 15.1-493(G) would bar only a judicial review of the reasonableness of the rezoning enactment. *Fairfax County* v. *Miller & Smith, Inc.,* 242 Va. 382, 384, 410 S.E.2d 648, 650 (1991). The 30-day period would not bar the Landowners' claims that the rezoning ordinance is void *ab initio* upon the several grounds alleged, *see, e.g., City of Alexandria* v. *Potomac Greens Assoc.,* 245 Va. 371, 429 S.E.2d 225 (1993),[1] and that the ordinance violates the Landowners' vested rights, *see, e.g., Holland* v. *Johnson,* 241 Va. 553, 403 S.E.2d 356 (1991). The 30-day period also would not bar the inverse condemnation claim and other claims under the Federal Constitution.

■ The Landowners also contend that the trial court erred in refusing to allow them to file an amended bill of complaint. Rule 1:8 provides that leave to amend "shall be liberally granted in furtherance of the ends of justice." Whether to grant an amendment is a matter resting within the sound discretion of the trial court. *Roberts* v. *Roberts,* 223 Va. 736, 742, 292 S.E.2d 370, 373 (1982).

■ In the present case, nothing in the record suggests that the City would have been prejudiced by allowance of the amended bill of complaint. We conclude, therefore, that the trial court abused its discretion in failing to allow the filing of the amended bill.[2]

■ We also conclude that the trial court erred in refusing to conduct an evidentiary hearing as requested by the Landowners. As we previously observed, evidence is necessary to determine what decision, if any, was made by the City Council on February 19, 1991. Moreover, the City has advanced the defense of judicial estoppel to some of the Landowners' claims, and consideration of this defense will require the production of evidence.

---

[1] In *Potomac Greens*, we declared a rezoning ordinance void *ab initio* based upon the failure of the City of Alexandria to follow the requisite statutory procedures for its enactment. 245 Va. at 378, 429 S.E.2d at 228. In so holding, however, we directed that our decision "shall operate prospectively only, and shall not affect other amendments enacted prior to our decision." *Id.,* 429 S.E.2d at 229. In the present case, the City suggests that our statement regarding prospective application would apply to the purported rezoning because the City Council made its decision before we decided *Potomac Greens*. We do not agree. Prospectivity applies only to rezoning ordinances that had become final at the time we decided *Potomac Greens*. Prospectivity does not apply to enactments that are the subject of litigation pending at the time *Potomac Greens* was decided.

[2] In so ruling, we express no opinion whether Bedford should be allowed to intervene as a party complainant.

Accordingly, we will reverse the trial court's judgment and remand the case for further proceedings consistent with the views expressed in this opinion.

*Reversed and remanded.*