COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Senior Judge Coleman
Argued at Chesapeake, Virginia


ROBERT L. WIDGEON
                                    MEMORANDUM OPINION* BY
v.    Record No. 1272-02-1          JUDGE LARRY G. ELDER
                                      DECEMBER 17, 2002
SANDRA A. WIDGEON


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                   A. Bonwill Shockley, Judge

           Victoria V. Humphreys for appellant.

           Cheshire I'Anson Eveleigh (Wolcott, Rivers,
           Wheary, Basnight & Kelly, P.C., on brief),
           for appellee.


     Robert L. Widgeon (husband) appeals from a decision of the

Virginia Beach Circuit Court (trial court) granting his former

wife, Sandra A. Widgeon (wife), a divorce and resolving issues

of child custody, equitable distribution, and attorney's fees

and costs.  On appeal, he contends the trial court erroneously

(1) denied his request for divorce on grounds of desertion; (2)

awarded primary physical custody of the parties' minor child to

wife; (3) failed to require wife to pay a portion of the balance

on the second mortgage on the marital residence; and (4) ordered

him to pay half the costs of the proceeding and denied his

request for attorney's fees.  He also contends the trial court's

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

decision failed to give proper deference to the credibility determination made by the commissioner in chancery to whom the case was referred.

We hold that, regardless of the recommendations of the commissioner in chancery, the evidence supported the trial court's decision to grant the parties a no-fault divorce and to refuse to require wife to pay any of the parties' second mortgage obligation if husband chose to refinance the marital home rather than sell it. Finally, we conclude the trial court based its award of primary physical custody of the parties' child to wife on an erroneous factual finding. Thus, we remand to the trial court to consider anew, based on the evidence in the record, the issues of child custody and attorney's fees, and we affirm in all other respects.

I.

A.

COMMISSIONER'S CREDIBILITY DETERMINATION

"When a trial court refers a cause to a commissioner in chancery, it does not delegate its judicial function to the commissioner . . . ." Kelker v. Schmidt, 34 Va. App. 129, 136-37, 538 S.E.2d 342, 346 (2000). "[W]hen the commissioner's finding[s] [are] specifically based on what the commissioner saw and heard," i.e., credibility determinations based on "demeanor and appearance," and "the commissioner [makes clear this reliance by] describ[ing] such observations in his or her

report," "the commissioner is in a better position than the trial judge to make factual findings on that basis," and the chancellor must "give 'due regards' to the commissioner's factual findings." Id. at 139-40, 538 S.E.2d at 347-48.

Conversely, "if the commissioner's determination is based on the substance of the testimony and not upon the witness' demeanor and appearance, such a finding is as determinable by the trial judge as by the commissioner." Id. at 139, 538 S.E.2d at 347. Thus, absent a clearly articulated credibility determination by the commissioner, the chancellor is free to reach a conclusion contrary to that of the commissioner, see id., and on appeal, we affirm the chancellor's determination unless it is plainly wrong, see, e.g., Snyder Plaza Props., Inc. v. Adams Outdoor Advertising, Inc., 259 Va. 635, 641, 528 S.E.2d 452, 456 (2000).

Here, the commissioner commented on wife's credibility directly in making his recommendation on the custody issue and indirectly in concluding wife's bill of complaint for divorce was not filed in good faith. However, in doing so, he referred only to the fact that her testimony conflicted with the testimony of others. Because he made no clearly articulated credibility determination based on wife's "demeanor and appearance," the trial court was free to reject the commissioner's assessment of wife's credibility and to redetermine her credibility based on the record.

- 3 -

B.

GROUNDS FOR DIVORCE

On September 23, 1999, wife filed for divorce on grounds of constructive desertion, based on "a course of" "cruel and willful conduct" and "a general withdrawal from the marital relationship." Husband was served with the bill of complaint on September 24, 1999. Wife left the marital residence on September 27, 1999. On September 30, 1999, husband filed an answer and cross-bill alleging actual desertion.

Wife testified that husband physically abused her on four separate occasions, including on Father's Day in 1994, when he kicked her in the stomach. She called the police but opted not to file charges against husband. Husband admitted pushing wife during the 1994 Father's Day incident, saying wife was angry, threw things at him, poured a drink on his head and called the police. No other evidence corroborated the remaining three incidents of violence about which wife testified.

Wife also testified, with corroboration, that in 1997 before the parties' child was born, husband physically left the marital bedroom and did not return, a fact husband admitted.

The commissioner found that the bill of complaint was "not . . . filed in good faith." He noted that wife had "not corroborated her grounds of divorce" and that her "bill of complaint ought to be dismissed." He recommended that husband be granted a divorce based upon wife's desertion.

Wife excepted to the commissioner's recommendation that husband was entitled to a fault-based divorce on the ground that wife deserted him when she left the marital residence after filing for divorce.  The trial court sustained wife's exception and granted the parties a no-fault divorce based on a one-year separation.

A "long-established rule in Virginia [provides] . . . that 'one spouse is not guilty of legal desertion in separating from the other after the institution of a suit for divorce or during its pendency.'"  Byrd v. Byrd, 232 Va. 115, 119, 348 S.E.2d 262, 264 (1986) (quoting Alls v. Alls, 216 Va. 13, 14, 216 S.E.2d 16, 17 (1975)).  The Supreme Court has recognized, however, that this rule ought not be applied "'where the original suit turns out to be frivolous, a mere sham created in order to permit the complaining [spouse] to desert the defendant [spouse] with impunity.'"  Id. (quoting Roberts v. Roberts, 223 Va. 736, 741, 292 S.E.2d 370, 373 (1982)).

The spouse claiming the original suit is frivolous bears the burden of "establishing a set of facts warranting application of [the] exception to the Alls rule."  Id. at 119-20, 348 S.E.2d at 264.  The Court has defined "'frivolous' . . . '[as] having no basis in law or fact'" and has observed that the complaining party's allegations may be "insufficient to support [the] claim for divorce" but still "ha[ve] a basis in law and fact and present a bona-fide, justiciable controversy."

Id. at 120, 348 S.E.2d at 265 (quoting Webster's Third New International Dictionary 913 (1971)). The absence of corroboration, standing alone, does not compel the conclusion that the suit is frivolous. See id. It is true that the Court in Byrd contemplated a situation in which corroboration was lacking because "no third person was present when [the alleged acts] occurred." Id. Nevertheless, we hold a court is not compelled to find a suit is frivolous or has been filed in bad faith simply because the evidence implies that corroborating witnesses exist but the complaining spouse ultimately does not produce those corroborating witnesses.

Here, husband admitted to the occurrence of at least a portion of one of the incidents to which wife testified in support of her claim for constructive desertion. Wife's failure to provide evidence from medical or law enforcement personnel to corroborate husband's other alleged acts of violence against her is not dispositive of the question. Husband bore the burden of proving wife's bill of complaint alleging constructive desertion was frivolous, and the evidence supported the trial court's finding that he failed to do so, despite the commissioner's finding to the contrary.[1]

---

[1] Even when a fault ground for divorce has been proved, a trial court retains the discretion to grant the parties a no-fault divorce, see, e.g., Zinkhan v. Zinkhan, 2 Va. App. 200, 210, 342 S.E.2d 658, 663 (1986), and it is not compelled "to give precedence to one proven ground of divorce over another,"

C.

CUSTODY OF THE PARTIES' MINOR CHILD

One child, a daughter, E.L., was born of the parties' marriage, on July 2, 1997.  Each party sought primary physical custody of E.L.

The commissioner recommended joint legal custody of the child with primary physical custody to father.  In making this recommendation, he noted the following:

> I find that [wife's] credibility is less persuasive than that of [husband].
> . . . .  Her testimony is contradicted and not supported by the child's teacher and daycare provider, while the father's testimony has not been.
> It appears to me that the father is the person who will most promote a relationship with the other parent and who will be more supportive of the child consistent with her best interests.

Contrary to the commissioner's recommendation, the trial court awarded primary physical custody of E.L. to wife.  In doing so, it found husband was "a very good father" who "certainly seems involved in both his child's upbringing, and his stepson's upbringing."  It found "most of the criteria in the statute, the ages of the part[ies] and those kind[s] of things, are probably a wash," but that "[i]t . . . appear[ed,] . . . before the situation escalated, . . . it was the mother that was more involved with the day-to-day upbringing [of E.L.],

Robertson v. Robertson, 215 Va. 425, 426, 211 S.E.2d 41, 43 (1975).

doctor's appointments and things like that."  It observed further that wife's son's specific testimony about E.L. and "what goes on with [her]" permitted certain inferences about the positive nature of the relationship between E.L. and her stepbrother.  The court concluded that "the scale tips in the mother's favor . . . [p]rimarily because of the way the child reacts with the stepson[] and the fact that she sleeps with the primary caretaker."  The trial court did, however, caution wife against "doing anything to keep that child from a relationship with the father" and indicated that such behavior could provide grounds for a change in custody.

In custody determinations, "the controlling consideration is always the child's welfare . . . ."  Sutherland v. Sutherland, 14 Va. App. 42, 43, 414 S.E.2d 617, 618 (1992).  In determining what custodial arrangement serves the best interests of a child, the court shall consider the factors enumerated in Code § 20-124.3.  These factors include the relationship of the child with each parent and "other important relationships . . . , including but not limited to siblings, peers and extended family members."  Code § 20-124.3(3), (4).

Husband contends the evidence failed to support two of the findings of fact upon which the trial court based its custody decision.  In ruling that "the scale tips in the mother's favor," the trial court relied "primarily" on "the way the child

reacts with the stepson, and the fact that she sleeps with the primary caretaker."

Evidence in the record supports the first of these findings. The commissioner stated in his report that the record was devoid of "testimony as to the relationship between [the parties' daughter and her stepbrother, wife's son from a previous relationship]." Although the trial court referred to "the way the [parties'] child reacts with the stepson," it noted that

> just listening to the stepson talk about the
> birthday parties and who organized which,
> that there is just some explicit information
> that you can take about the relationship of
> the two kids, just from the testimony, and
> his knowledge of what goes on with his
> younger sister, and the extent that he knows
> what happens with her.

We hold the inferences the trial court drew from this testimony were not plainly wrong or without evidence to support them.

The record, however, is devoid of any evidence to support the trial court's statement that "[the parties' child] sleeps with the primary caretaker." Assuming the trial court's use of the term, "primary caretaker," referred to wife, no one testified that the parties' child physically slept in the same bed or the same room with wife. Further, no evidence established that the child stayed overnight more frequently with wife than husband under the visitation schedule then in effect.

We are unable to conclude this factual error was harmless under the specific facts and procedural posture of this case, including the trial court's decision not to follow the custody recommendation of the commissioner and the trial court's statement that this erroneous finding was one of the "[p]rimar[]y" facts upon which it relied in awarding custody. Thus, we remand to the trial court to reconsider its custody award based on the evidence in the record.

D.

THE MARITAL RESIDENCE

The parties obtained a second mortgage in 1996 to pay the debts of both parties, most of which were incurred separately before the marriage. Wife represented that about 40% of the debt resulted from her premarital obligations. Husband's evidence indicated that approximately 48% of the debt resulted from his premarital obligations, 43% of the debt resulted from wife's, and 9% of the debt was incurred jointly by the couple during the marriage. Once the second mortgage debt was incurred, the parties made payments on that mortgage in proportion to the share of their respective premarital debt paid off with mortgage proceeds.

Husband sought to refinance the house in his name only and to have wife held responsible for half the second mortgage. The commissioner found the marital equity to be $2,316.74. He

recommended that husband be allowed to refinance the house and purchase wife's interest in the property for $1,158.37.

The trial court ruled that if the home were sold, any remaining equity was to be divided evenly by the parties. The trial court found that the transaction would "become[] a wash" if the home were refinanced by husband alone. Husband did not object to any of the figures the trial court used in its calculations and contends only that he should not be required to pay wife's premarital debt, which remained her separate property. We assume without deciding that wife's premarital debt remained her separate obligation, even though it was commingled with husband's separate property and marital property and converted into a second mortgage on a marital asset. Nevertheless, the evidence, viewed in the light most favorable to wife, supported a finding that allowing husband to refinance the house without awarding wife a share of any equity in the property sufficiently compensated husband for wife's share of the second mortgage.

The trial court used the $101,000 appraisal figure for the property rather than the $89,912 figure used for purposes of the city's real estate tax assessment. The outstanding balance on the first mortgage was $86,398.26, leaving equity of $14,601.74, not including the second mortgage balance.

The balance on the second mortgage was $12,285--less than the $14,601.74 equity remaining after satisfaction of the first

- 11 -

mortgage. The evidence established that wife's separate share, if any, of the parties' joint obligation on the second mortgage, based upon the amount of her separate premarital debt, was no greater than husband's separate share. Thus, attributing both half the $14,601.74 equity and half the second mortgage obligation to each party, actual equity of $2,316.74 would remain to be divided between the parties after satisfaction of both mortgage obligations. Although husband represented he would have to "pay significantly" to refinance the property, he offered no evidence of what his refinancing costs would be. The trial court also observed that husband "did end up with a truck out of this," although evidence of the truck's value was lacking. Because the appraisal figure exceeded the first and second mortgage balances and husband provided no evidence of refinancing costs, we hold the trial court's ruling allowing husband to refinance without paying wife for her share of any equity in the property sufficiently compensated husband for having to assume wife's share of the second mortgage obligation. If husband felt the refinancing option resulted in financial unfairness, he retained the option of having the house sold, with any resulting equity or expenses to be divided evenly by the parties.

E.

ATTORNEY'S FEES AND COSTS

The commissioner recommended that wife reimburse husband for $3,500 of his attorney's fees and that wife pay all costs. The trial court held each party responsible for his or her own attorney's fees and directed them to divide the costs equally.

Whether to award attorney's fees and costs rests within the sound discretion of the trial court.  See, e.g., Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996). Based on the trial court's rejection of the commissioner's recommendation for a fault-based divorce and its finding that both parties "probably did things they didn't need to," we hold the trial court did not abuse its discretion in requiring the parties to pay their own attorney's fees and to divide costs evenly.  However, because we remand on the custody issue, we direct the court to consider anew the issue of attorney's fees and costs in light of its decision on the custody issue.

II.

For these reasons, we hold the evidence supported the trial court's decision to grant the parties a no-fault divorce and to refuse to require wife to pay any of the parties' second mortgage obligation if husband chose to refinance the marital home rather than sell it.  Finally, we conclude the trial court based its award of primary physical custody of the parties' child to wife on an erroneous finding.  Thus, we remand to the

- 13 -

trial court to consider anew, based on the evidence in the record, the issues of child custody and attorney's fees, and we affirm in all other respects.

<u>Affirmed in part,</u>
<u>reversed in part</u>
<u>and remanded.</u>