COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges McClanahan and Haley
Argued at Salem, Virginia


JOHN VICTOR DRITSELIS
                                                    MEMORANDUM OPINION* BY
v.      Record Nos. 2790-04-3 and 0239-05-3      JUDGE JAMES W. HALEY, JR.
                                                         NOVEMBER 8, 2005
MARY TSAKIRES DRITSELIS


            FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                           Jonathan M. Apgar, Judge

            Terry N. Grimes for appellant.

            William C. Maxwell (Alton B. Prillaman; Osterhoudt, Prillaman,
            Natt, Helscher, Yost, Maxwell & Ferguson, PLC, on brief), for
            appellee.


       In this divorce proceeding, John Dritselis, husband, asserts that the trial court erred by:

1) not applying Code § 20-107.3 to make an equitable distribution of the marital estate; 2) rejecting

his claim to set aside the parties' post-nuptial property settlement agreement; and 3) not granting a

motion to amend his bill of complaint to add spousal support and attorneys' fees to the prayer for

relief.  We affirm in part and reverse in part.

                                           I.

       The parties were married in 1962 in Mercer County, West Virginia and immediately moved

to Virginia.  They had two children, Victor and Stephanie, who are both adults living on their own.

In April 1989, husband was charged with misdemeanor assault following an encounter with a

waitress at the parties' restaurant.  Although the charge was dismissed on appeal, husband was

concerned that the young woman involved in the incident would file a civil suit.  In an effort to

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

isolate his property from any damage award, in 1990, after the parties' separation, husband signed two deeds conveying all of his interest in property the parties previously held in a tenancy by the entirety to wife. On March 22, 1991, the parties entered into a separation agreement in which husband conveyed all remaining interest in certain real property to wife, and she agreed to pay all mortgages on the properties. [1] Husband signed the agreement in the office of wife's attorney, but wife was not present at the time. Husband consulted counsel concerning the agreement before signing it, and counsel advised him not to sign it.

Before they reached the property settlement agreement, the parties had numerous discussions concerning why the transfers were taking place. Husband admitted that the transfer was to prevent the property from being subject to creditors' claims following a possible civil suit by the waitress from the 1989 incident. He testified that wife promised to convey the interest back to him after the statute of limitations ran on any claims. Wife claims that the transfers were made in contemplation of the separation. The relevant limitations period ended one month after husband signed the agreement. After signing the agreement, husband moved first to Chicago, Illinois, then to Richmond, Virginia.

In August 1997, more than six years after he signed the settlement agreement and the statute of limitations had expired on any civil claim from the encounter with the waitress, husband commenced his divorce action and requested the trial court to set aside the settlement agreement on grounds of fraud, unconscionability, and lack of consideration. His bill of complaint contained no request for spousal support or attorneys' fees. Husband filed a motion to amend his complaint on May 21, 1998, but he never set the motion for hearing.

---

[1] The agreement itself is dated March 22, 1991, the date husband signed it. Wife did not sign the agreement until March 27.

Testimony at various hearings and depositions highlighted the dispute concerning the reasons for the transfers of title. Both wife and the parties' son testified that husband initiated the discussions of transferring the property to her and that she never promised to return the property after the limitations period had ended. Husband and the parties' daughter testified that wife promised to retitle the property. Additionally, the son testified that husband offered him a $10,000 bribe for favorable testimony, which the son declined.

On October 22, 2003, the trial court entered a divorce decree, denied the motion to set aside the property settlement agreement, and incorporated the agreement into the decree. The trial court found that the agreement was entered voluntarily; husband came into equity without clean hands, and laches barred his claim. Following a motion to reconsider the decision and further testimony, the trial court entered a decree on January 23, 2004 again denying the motion to set aside the settlement agreement. At this time the only remaining issues were the division of personal property, spousal support, and attorneys' fees.

The parties conducted discovery in anticipation of spousal support being an issue. Information sought through discovery concerning income, employment, and liabilities constitutes hundreds of pages of the record, including eleven years of tax returns. In April 2001, the trial court ordered wife to pay *pendente lite* support to husband, retroactive to November 2000, following a hearing presenting forty pages of transcript on the subject of income. In the proposed order written by wife's counsel memorializing the rulings of that hearing, permanent support is recognized as an issue to be resolved.

After the *pendente lite* hearing, wife again requested information through discovery that related to permanent support. Husband continued to ask for wife's tax returns. A hearing on the issue of spousal support was scheduled for October 2000, September 2003, and two different times

in October 2003. Each hearing was delayed. Orders of the court, as well, acknowledged that permanent spousal support was an issue awaiting future resolution.

During a hearing on April 28, 2004, wife for the first time objected to husband's presentation of evidence concerning spousal support and attorneys' fees because such relief was not requested in the bill of complaint. Husband immediately requested leave to amend, but the court denied the request. The trial judge entered his final order on January 5, 2005, and husband appealed to this Court.

## II.

Code § 20-107.3 lists eleven factors that a trial court must consider when making an equitable distribution of marital property. The same section, however, also provides that "[n]othing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties." Indeed, public policy in Virginia strongly supports the use of voluntary agreements to promote the resolution of the disputes of the parties. Morris v. Morris, 216 Va. 457, 219 S.E.2d 864 (1975). If the parties have a valid separation or property settlement agreement that disposes of the marital property, application of the factors from Code § 20-107.3 becomes unnecessary. A trial court need not apply the statutory factors to dispense property when the parties themselves have already done so. Because we hold that the settlement agreement in this case was validly executed and enforceable, the trial court was not required to apply the statutory scheme of equitable distribution to the same property disposed of by the parties' agreement.

## III.

We hold that the settlement agreement is valid and that the trial court properly rejected the husband's challenges to it. Husband challenged the validity of the separation agreement on the grounds that it is unconscionable, not supported by consideration, and obtained by fraud. He further

objected to the trial court's finding that his recovery is barred by laches and the doctrine of unclean hands.

We agree with the trial court that husband entered into the settlement agreement freely, voluntarily, and intelligently. The party seeking to avoid an agreement on grounds of fraud or unconscionability bears the burden of proof by clear and convincing evidence. Derby v. Derby, 8 Va. App. 19, 26, 378 S.E.2d 74, 77 (1989). Husband entered into these agreements after months of discussion with his family about the fear of a civil suit stemming from the April 1989 incident and consultation with an attorney who advised him not to sign it. In return for gaining all interest in the property, wife assumed the entire mortgage debt as consideration. The parties and their adult children had discussed such an agreement for months. This provides an additional basis to uphold the trial court's determination that the agreement should not be voided for fraud or unconscionability. Husband's claim that the agreement lacked adequate consideration is also without merit. Wife's assumption of the mortgages on the properties is sufficient consideration. See, e.g., Langman v. Alumni Ass'n of the Univ. of Virginia, 247 Va. 491, 504, 442 S.E.2d 669, 678 (1994) (assumption of the mortgage was full consideration for the portion of the property that remained encumbered by the mortgage).

The trial court's decision to uphold the settlement agreement and incorporate it into the divorce decree also relied upon the equitable doctrines of laches and "unclean hands." "Laches is the failure to assert a known right for an unexplained length of time under circumstances prejudicial to an adverse party." Masterson v. Board of Zoning Appeals, 233 Va. 37, 47, 353 S.E.2d 727, 735 (1987). We will reverse a decision that laches bars a claim only when the trial court has abused its discretion. Morris v. Mosby, 227 Va. 517, 521, 317 S.E.2d 493, 496 (1984). The party asserting the defense has the burden of proof in the trial court to show both unreasonable delay and prejudice.

Id. In this case the trial court did not abuse its discretion in finding that the husband's claim to set aside the settlement agreement was barred by laches.

Husband asserts that wife agreed to retitle the property in joint names after the limitations period stemming from the April 1989 incident had run. Wife denied this. The time for bringing those claims expired in April 1991. Husband could have asserted a right to the property and to set aside the agreement at that time.[2] He waited, however, at least three and a half years before even asking wife to re-title the property. During this time, the evidence proved that wife made major repairs on some of the properties and decreased the outstanding mortgage balances. Thus, the trial court did not abuse its discretion in finding the claim to be barred by laches.

The trial court's finding that "unclean hands" also barred his claim is within the discretion of the trial court and should only be reversed when abused. Wiglesworth v. Taylor, 239 Va. 603, 608-09, 391 S.E.2d 299, 303 (1990). Equity will not relieve a party from the consequences of his own fraudulent act. Lambert v. B.F. Corporation, 162 Va. 477, 486-87, 29 S.E.2d 383, 387 (1944). Husband in the case at bar admits that he transferred the title to the properties and signed the settlement agreement in order to defraud future judgment creditors. As such, his conduct was a fraudulent transfer. Because husband sought relief at equity from a fraudulent transaction, the trial court did not abuse its discretion in barring him relief for having "unclean hands."

Husband's argument that Westbrook v. Westbrook, 5 Va. App. 446, 364 S.E.2d 523 (1988), and Ranney v. Ranney, 45 Va. App. 17, 608 S.E.2d 485 (2005), control this case is misplaced. We agree that when undertaking an equitable distribution of marital property the court may not consider such equitable doctrines. However, in this case, the trial court was considering a claim to set aside a settlement agreement, rather than distributing marital property. Husband tried to void it based on

---

[2] The Court notes that the settlement agreement was signed in March of 1991, only one month before the expiration of any potential claims.

- 6 -

equitable grounds.  Because a settlement agreement is a contract, <u>Smith v. Smith</u>, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986), an action to set it aside is susceptible to the traditional equitable defenses.  Therefore, the trial court did not err by considering the equitable defenses of laches or "unclean hands" as a bar husband's claim.

IV.

Lastly, husband contends that the trial court erred when it denied his motion for leave to amend his bill of complaint to include a prayer for spousal support and attorney's fees.  Rule 1:8 states that "leave to amend shall be liberally granted in furtherance of the ends of justice."  The decision to grant leave lies within the sound discretion of the trial court and should only be reversed in the case of an abuse of discretion.  <u>Kole v. City of Chesapeake</u>, 247 Va. 51, 57, 439 S.E.2d 405, 409 (1994).  We find that the trial court abused its discretion in denying husband leave to amend his complaint.

A court may not grant relief that has not been sought by the parties.  <u>Potts v. Mathieson Alkali Works</u>, 165 Va. 196, 207, 181 S.E. 521, 525 (1935).  This Court specifically applied that principle in <u>Boyd v. Boyd</u>, 2 Va. App. 16, 340 S.E.2d 578 (1986), to say that a plaintiff must include a request for spousal support in his prayer for relief during a divorce proceeding.

If leave to amend a bill of complaint will not prejudice the defendant and the plaintiff has not previously amended his complaint, it is an abuse of discretion for the trial court to fail to allow the motion.  <u>Mortarino v. Consultant Eng'g Servs., Inc.</u>, 251 Va. 289, 296, 467 S.E.2d 778, 782 (1996).  Husband requested leave to amend as early as 1998, and the final hearing was over four years later.  Allowing leave to amend at this stage of the proceedings would not result in any prejudice to wife.  She conducted extensive discovery pertaining to spousal support, and the record reflects both parties' knowledge that spousal support was an issue for the trial court to decide.  Temporary spousal support had been in place since 2001, and the trial court had frequently

commented during hearings that spousal support was an issue remaining to be resolved. For nearly four years between the September 2000 notice of a hearing on spousal support and the entry of the final order denying leave to amend the bill of complaint in June 2004, wife acknowledged that husband sought permanent spousal support and prepared to argue the issue. The trial court in its letter explaining its denial of leave to amend that "[p]laintiff . . . makes a strong argument that the Defendant cannot show prejudice," and "[c]learly, the Defendant and her counsel have been preparing on this issue for some time." Given the amount of time and effort spent preparing to address this issue, wife would not be prejudiced by granting the leave to amend.

A court still may deny a motion for leave to amend if it does not further the "ends of justice in any manner." Bentz v. Bentz, 2 Va. App. 486, 488, 345 S.E.2d 773, 774 (1986). Bentz, however, involved an amendment that was intended only to delay the proceedings. Furthermore, the Supreme Court has stated that "[t]he ends of justice should never be sacrificed to mere form, or by too rigid an adherence to technical rules of practice." Watson v. Brunner, 128 Va. 600, 608, 105 S.E. 97, 101 (1920) (citation omitted). Here, the amendment merely seeks to match the form of the pleadings to the substance of the case as it has progressed. Thus, we hold the trial court abused its discretion in failing to allow husband to amend his bill of complaint and request spousal support or a reservation of future support.

V.

Therefore, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

Affirmed, in part,
reversed, in part,
and remanded.

McClanahan, J., concurring, in part, and dissenting, in part.

I agree with the majority affirming the trial court on the issues of equitable distribution and the post-nuptial property settlement agreement; however, I would affirm the trial court on its decision to deny husband the opportunity to amend his bill of complaint six years after the complaint was filed.

The decision whether to grant an amendment to the pleadings under Rule 1:8 lies within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. Kole v. City of Chesapeake, 247 Va. 51, 57, 439 S.E.2d 405, 409 (1994) (citing Roberts v. Roberts, 223 Va. 736, 742, 292 S.E.2d 370, 373 (1982)); see also Alphin v. Alphin, 15 Va. App. 395, 400, 424 S.E.2d 572, 575 (1992); Bentz v. Bentz, 2 Va. App. 486, 488, 345 S.E.2d 773, 774 (1986).

Six years after the original complaint was filed on August 8, 1997, no amended pleading had been filed. Husband filed his initial motion to amend on May 21, 1998, without stating any basis for it. The motion was never advanced before the court until husband orally moved to amend the complaint to include spousal support and attorney's fees at the April 28, 2004 hearing, and then formalized the motion in writing on May 6, 2004. Husband failed to diligently pursue the amendment for six years; and now, he asks the Court to use its discretion to allow him to do so in the final stages of the proceedings.

The court clearly weighed the facts of the case, considered the length of time that had lapsed for husband to amend his original pleading, and analyzed the principles of equity and prejudice relevant to both parties. Accordingly, I would hold that the trial court did not abuse its discretion in denying husband the opportunity to amend his original complaint. Although the right to file amended pleadings shall be liberally granted in furtherance of the ends of justice, it is

not an abuse of discretion to deny an amendment where the ends of justice do not require it.

Rule 1:8; <u>see</u> <u>Roberts</u>, 223 Va. at 742, 292 S.E.2d at 373.  For these reasons, I dissent.