COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Friedman and Senior Judge Petty
Argued at Williamsburg, Virginia

UNPUBLISHED

GIROLAMA M. LOPICCOLO, ET AL.

v.       Record No. 1041-24-1

ABLE ARCHER, LLC, ET AL.

MEMORANDUM OPINION* BY
JUDGE FRANK K. FRIEDMAN
OCTOBER 14, 2025

FROM THE CIRCUIT COURT OF YORK COUNTY
B. Elliott Bondurant, Judge Designate

Robert A. Small (Harold H. Barton, Jr.; Forbes, Reid, Dunnigan &
Messier, PLC, on briefs), for appellants.

Meredith L. Yoder (Mary T. Morgan; Parker, Pollard, Wilton &
Peaden, P.C., on brief), for appellees.

Girolama M. Lopiccolo, Anna M. Bazzani, and Pamela A. Buffa (appellants) appeal the

circuit court's order sustaining demurrers without leave to amend to their claims against Able

Archer, LLC (Able Archer), Conway H. Sheild, III, and Casey Rosinski (collectively, appellees)

and dismissing their amended complaint and petition for accounting. Appellants argue that the

amended complaint pleaded sufficient facts to show that a joint venture existed such that appellants

are entitled to the legal and equitable relief sought. They additionally argue that the circuit court

abused its discretion by denying them leave to further amend their complaint. Finally, appellants

contend that the circuit court abused its discretion by sustaining the demurrer without first

permitting discovery. Finding no error, we affirm the circuit court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

Lopiccolo, Bazzani, Joseph Buffa (Joseph), and Mario C. Buffa (Mario) were siblings who co-owned a group of properties in York County, Virginia. The properties, which consisted of both commercial leased properties and undeveloped properties, were held in three different limited liability companies (LLCs) of which the siblings were members. In May 2013, the siblings experienced financial difficulties when Mario decided to leave the business and a bank loan securing one of the commercial properties became due. As a result, Lopiccolo and Joseph approached Dan Rosinski (Dan), a family friend, and proposed a business arrangement under which Dan would assume the properties' debt in exchange for title to the properties, member interest in the LLCs, and control over the day-to-day management of the properties. The parties also agreed that Mario would convey his membership interest in the LLCs to the remaining members and be released from all debts and obligations of the business. Finally, the parties agreed that Dan would sell the properties and that Lopiccolo, Bazzani, Joseph, and Dan would share the net proceeds of the sales.

The siblings and Dan asked Sheild, a local attorney, to assist them in drafting the formal agreements needed to create their business arrangement. Sheild arranged for Mario to sell his ownership interest in the properties and membership interest in the LLCs to the other siblings. Sheild then created Able Archer, a new LLC of which he was the manager and Dan the sole member. Next, Sheild drafted three agreements forming the business arrangement between the siblings and Able Archer: 1) a Commercial Purchase Contract, which transferred title to all properties held in the three LLCs to Able Archer; 2) an Assignment Agreement, which transferred the siblings' membership interests in the three LLCs to Able Archer; and 3) an Amendment and Supplement to the Assignment Agreement (Supplement), in which the parties agreed that, upon a "global sale" of all the assets held by Able Archer, the net proceeds of sale would be divided into

four equal shares and distributed to Lopiccolo, Bazzani, Joseph, and Able Archer. The Supplement was incorporated into the Assignment Agreement and signed by the siblings and Sheild on behalf of Able Archer.

Joseph died in September 2016 at which time his wife, Pamela, became the successor to his business interests. When Dan died in August 2018, his son, Casey (Rosinski), inherited his membership interest in Able Archer. Rosinski took over his father's duties managing and selling the properties in Able Archer but did not communicate with appellants regarding any decisions involving the properties. In January 2019, appellants obtained their own legal counsel and sent a letter to Sheild requesting that he and Rosinski provide an accounting of any property sales made under their business arrangement and the receipt and use of income and rents generated by the properties. Sheild responded that no accounting was required until a "global sale" of all properties had been completed. Sheild also stated that only members of Able Archer, not outside parties, are entitled to an accounting of the LLC's activities. Appellants made several more attempts to obtain information from Sheild and Rosinski.

On October 22, 2019, appellants filed a complaint and petition in the circuit court naming Able Archer and Sheild as defendants. The complaint requested a full financial accounting of the properties Able Archer held, including but not limited to records of sale, final settlement statements, and sale proceeds distributions. The complaint also asked the circuit court to enjoin Able Archer and Sheild from withholding information about future property sales and award appellants attorney fees and costs. Appellees filed an answer to the original complaint. Appellants then moved the circuit court for leave to amend their complaint and submitted a proposed amended complaint. The circuit court granted the motion.

Appellants' amended complaint added Rosinski as a defendant and requested compensatory and punitive damages, in addition to the equitable relief requested in their original

complaint and petition.[1]  The amended complaint alleged that the business arrangement created by the written agreements established a joint venture, such that certain duties were imposed upon Able Archer, including the duty to "allow access to the records and accounts of the joint venture."  The amended complaint attached copies of the Commercial Purchase Contract, Assignment Agreement, and Supplement and incorporated them by reference into the amended complaint.

Appellees demurred to the amended complaint, arguing that no joint venture existed between the parties and so appellants were not entitled to the legal and equitable relief sought.  In addition, they contended that Sheild and Rosinski owed no legal duties to appellants.  Appellees also argued that appellants' attempt to impose personal liability on the individual appellees, as member and manager of the LLC, was improper given Code § 13.1-1019.  Appellants opposed the demurrer and asked the circuit court to either overrule it or grant them leave to amend their complaint again.

Appellants served initial discovery requests including interrogatories, requests for production of documents, and requests for admissions on appellees.  Appellees objected to or denied all requests.  Appellants then moved the circuit court to overrule the objections and compel answers to the requested discovery.  Appellants also served a subpoena duces tecum on Sheild's law firm seeking records related to the sales of the properties in Able Archer.  Appellees moved to quash the subpoena, which appellants opposed.  Appellees also moved the circuit court

---

[1] The amended complaint requested compensatory damages for sales proceeds due to the appellants but not yet paid, for any income or profit diverted by appellees to other business interests, and for any other actions of appellees which reduced appellants' net profits from the business arrangement, should any of these be revealed in a financial accounting.  It also requested punitive damages for Able Archer's "malicious and willful refusal" to respond to appellants' requests for information.

to stay discovery pending a ruling on the demurrers. The circuit court did not hear or rule on any of the motions pertaining to discovery.

At the hearing on the demurrers,[2] Lopiccolo testified that Dan had consulted the siblings frequently about property sales and improvements when he was the sole member of Able Archer. Specifically, Lopiccolo stated that Dan regularly involved the siblings in discussions about property sales, informed them of potential buyers, and showed them, on one occasion, improvements that he had made to one of the commercial properties. The circuit court held that many of appellants' allegations stated legal conclusions, rather than facts, and concluded that the business arrangement between the parties was not a joint venture. The court also held that Sheild and Rosinski did not have any legal duty to furnish information to appellants, stating that it did not "see where they've done anything wrong."

During the hearing, appellants requested leave to amend the complaint to include additional facts pertaining to Dan's practice of regularly seeking input from the siblings and involving them in decisions related to their business arrangement. Appellees opposed the request, arguing that "there could never be facts that allege a joint venture in this particular case" and that further amendment would be futile. At the conclusion of the hearing, the circuit court sustained the demurrers without leave to amend. The circuit court remarked that the case had been "pending now for four years," that the complaint had already been amended once, and that appellants were "still nowhere near setting forth a complaint." The court expressly declined to rule on any issues regarding discovery, stating that it would not "go into whether or not there needs to be discovery."

---

[2] The hearing was delayed for almost two years while the parties litigated appellants' request to disqualify Sheild and his law firm from representing appellees in the case due to an alleged conflict of interest.

- 5 -

Appellants moved the circuit court to reconsider its decision denying leave to amend and sustaining the demurrer. On May 28, 2024, the circuit court entered a final order denying leave to amend, sustaining the demurrer, and dismissing the amended complaint and petition. Appellants timely appealed.

## ANALYSIS

"This Court reviews a circuit court's decision to sustain a demurrer de novo." *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). "To survive a challenge by demurrer, a pleading must be made with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment. In other words, despite the liberality of presentation which the court will indulge, the motion must state a cause of action.'" *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122-23 (2006) (quoting *Moore v. Jefferson Hospital, Inc.*, 208 Va. 438, 440 (1967)). "A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Givago Growth, LLC*, 300 Va. at 264. We further "interpret those allegations in the light most favorable to the plaintiff." *Taylor v. Aids-Hilfe Koln e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). In reviewing the legal sufficiency of the facts in a pleading for purposes of demurrer, a court may consider the substantive allegations set forth in the challenged pleading as well as any accompanying exhibits mentioned in the pleading. *Bragg v. Bd. of Supervisors*, 295 Va. 416, 423 (2018). *See also* Rule 1:4(i) ("The mention in a pleading of an accompanying exhibit shall . . . make such exhibit a part of the pleading."). "Legal conclusions are not taken as true in considering a demurrer." *Steward v. Holland Family Props., LLC*, 284 Va. 282, 292 (2012).

*I. The circuit court properly sustained the demurrer and dismissed the amended complaint and petition.*[3]

Appellants contend that the amended complaint pleaded sufficient facts to show that a joint venture existed, so they were entitled to a financial accounting of Able Archer's activities and any applicable monetary damages. They also argue that the circuit court misinterpreted factual statements in the complaint as legal conclusions in ruling on the demurrer. We disagree with both contentions.

In Virginia, a joint venture is "a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." *Horne v. Holley*, 167 Va. 234, 239 (1936). Parties enter into a joint venture when they: 1) enter into a joint business enterprise for their mutual benefit, 2) agree, expressly or impliedly, to share in the profits and losses of the enterprise, and 3) agree, expressly or impliedly, that each party is to have a voice in the control and management of the enterprise. *See Smith v. Grenadier*, 203 Va. 740, 744 (1962). "Joint [ventures] are not established by operation of law, but are created by contracts, express or implied. Little formality is required. The conduct of the parties, as well as other facts and circumstances of a particular case, will often justify the inference that such a contract existed." *Id.*

The Supreme Court of Virginia has found business enterprises to be joint ventures where the parties expressly labelled their arrangement as a "joint venture" or where they agreed, expressly or impliedly, to share in both the profits and active management of the enterprise. In

---

[3] Appellants also argue that the circuit court incorrectly found that Sheild and Rosinski were not personally liable for Able Archer's activities as a matter of law. The Virginia Limited Liability Company Act ("Act") shields LLC members and managers from personal liability for the LLC's liabilities. Code § 13.1-1019; *Gowin v. Granite Depot, LLC*, 272 Va. 246, 254 (2006). The amended complaint alleged no facts indicating that Sheild and Rosinski breached any legal duty owed to the appellants or acted outside the scope of their LLC duties. Therefore, we find no error in the circuit court's judgment sustaining the demurrer of these individual defendants.

*PGI, Inc. v. Rathe Products, Inc.*, 265 Va. 334 (2003), for instance, the Court held that a

marketing company and a production company had entered into a joint venture when they agreed

to work together to produce a traveling exhibition for the Smithsonian Museum.  265 Va. at

341-42.  In that case, the evidence at trial showed that the two companies had submitted a

proposal to jointly manage and operate the exhibition, had expressly labeled their arrangement a

"joint venture" in business documents, and had agreed to share both the expenses of the

exhibition and any net profits earned from it.  *Id.* at 337, 341-42.  Consequently, the Court

concluded that the two companies had "created a joint venture with shared management

responsibilities and the expectation of shared profits."  *Id.* at 341-42.

Similarly, in *Smith*, the Court held that a reasonable jury could conclude[4] that a joint

venture existed between two individuals who entered into separate contracts to perform

excavation work on a school building and to purchase and make payments on equipment needed

to perform the excavation.  203 Va. at 743, 745-46.  In so finding, the Court noted that a jury

could find that the contracts gave both parties "a right to the control and management" of the

excavation project as well as the ability to share in profits and losses derived from the use of the

equipment.  *Id.* at 745.

Where a joint venture exists, the Court has applied traditional partnership rules in

determining the rights, duties, and obligations of the parties to the joint venture.  *See Legum*

*Furniture Corp. v. Levine*, 217 Va. 782, 787 (1977) (holding that, absent an express agreement to

the contrary, profits should be shared equally between parties to a joint venture).  The Virginia

Uniform Partnership Act confers on all partners the right to "access [the] books and records" of

---

[4] In *Smith*, the Supreme Court reversed a circuit court's grant of summary judgment in favor of one of the defendants in a wrongful death action because the Court determined that a reasonable jury could find that a joint venture and master-servant relationship existed between the two defendants, thus, both defendants could potentially be found liable for the tort.

the partnership and the obligation to furnish information about the partnership's business affairs where another partner makes a reasonable request for this information. *See* Code § 50-73.101(B)-(C). At the same time, the Act imposes on all partners a fiduciary duty of loyalty, which includes the duty to "account . . . and hold as trustee for [the partnership] any property, profit, or benefit derived by the partner in the conduct . . . of the partnership business." *See* Code § 50-73.102(B)(1). Finally, the Act affords all partners the right to bring an action against the partnership or another partner for any "legal or equitable relief" necessary to enforce the partner's rights under the Act or partnership agreement. *See* Code § 50-73.103(B).

The pivotal issue here is whether the allegations in the amended complaint, and all reasonable inferences drawn therefrom, are sufficient to show that a joint venture existed. The amended complaint alleges, and the attached exhibits reflect, that the parties entered into a series of written agreements to sell the properties held in Able Archer and to share in the net proceeds of the sales.[5] In the trial court and on appeal, appellees have argued that appellants failed to allege sufficient facts to satisfy any of the elements of a joint venture. To resolve this appeal, however, we only address the third element: whether the amended complaint pleaded sufficient facts that the parties agreed to share in the control and management of Able Archer and its sale of the properties. *See Harris v. Howard*, ___ Va. ___, ___ n.5 (Apr. 3, 2025) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

Appellants contend that the amended complaint alleges sufficient facts to show that the parties had agreed to share in the control and management of Able Archer and its sale of the

---

[5] Appellants did not assert a claim for breach of contract. And while the amended complaint mentions fiduciary duties, appellants contend those duties are owed only because a joint venture purportedly existed. No claim of fraud is raised either. The claim as set out rises or falls based on whether a joint venture was created.

properties. Specifically, appellants note that the amended complaint alleged that "it was the understanding" of all parties when they entered into the business arrangement that all the properties in Able Archer would be sold and "any profits distributed within a reasonable period of time of approximately a year" from the time of agreement. The parties "did not expect or agree that Able Archer, LLC would hold the properties at its whim, and perhaps indefinitely without the sales required to allow [appellants] to share in the profits of sale . . . within a reasonable period of time after October 2013." Finally, appellants also point to the allegation that the original parties' practice was for Dan to "pay money to [appellants] as individual properties were sold."

We disagree with appellants that these allegations are sufficient to show that the parties had agreed, expressly or impliedly, to share in the control and management of Able Archer and its sale of the properties. The allegations, taken together, contain no facts or reasonable inferences showing that the parties had agreed that each would have a voice in and control of the actions needed to execute the property sales, such as locating and approving potential buyers for the properties, making improvements to the properties to increase sale value, drawing up sales agreements, determining the terms of sales agreements, and managing the properties or rents generated by the properties. As is discussed more fully below, the series of agreements between the parties in no way gave appellants control or management of Able Archer's activities. Simply put, the allegations of the amended complaint did not state or permit a reasonable inference that the parties agreed that each would have the right to actively control and manage Able Archer and its sale of the properties. *See Smith*, 203 Va. at 745.

Moreover, a circuit court "considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Dodge v. Trs. of Randolph-Macon Woman's College*, 276 Va. 1, 5 (2008)

(quoting *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 382 (1997)). The terms of the Supplement, incorporated into the amended complaint, contradict appellants' allegations. The agreement merely provides that, "upon a global sale" of all the assets held in Able Archer, the net proceeds of the sales would be divided into four equal shares and distributed to the parties. When considering a contract on demurrer, we construe the terms of the agreement "as written, without adding terms that were not included by the parties." *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 516 (2014). The incorporated agreements do not contain terms providing for the shared management and control of Able Archer, and we do not read these absent terms into the agreements.

Appellants additionally contend that the amended complaint alleges that the parties to the business arrangement were members of "a partnership," that they had "the right to track the money and actions related to each of the properties" in Able Archer, and that they had a right to an accounting of documents related to the business arrangement. These assertions are not factual allegations but legal conclusions which are not binding on the circuit court or this Court. "In reviewing a trial court's judgment sustaining demurrer," this Court will not "accept as true the conclusions of law in the bill of complaint." *Lehman v. Lehman*, 38 Va. App. 598, 600 (2002). Because the allegations appellants rely on are legal conclusions rather than factual statements, we do not consider them when reviewing the circuit court's decision on demurrer.

Finally, we note that Lopiccolo testified at the demurrer hearing that Dan had regularly involved the siblings in decisions related to the business arrangement, including consulting them about sales of individual properties, potential buyers, and improvements made to at least one commercial property. But appellants did not plead these facts in the amended complaint, include them in any attached exhibits to the complaint, or otherwise incorporate them into the complaint. When evaluating a demurrer, a circuit court may normally consider only the "substantive

- 11 -

allegations" contained in the challenged pleading and "any accompanying exhibit mentioned in the pleading." *Bragg*, 295 Va. at 423.

The amended complaint and incorporated exhibits do not contain sufficient facts to show that the parties had agreed to share in the management and control of Able Archer and its sale of the properties. Without a sufficient allegation of management and control, the amended complaint failed to state a claim that a joint venture existed. Thus, we affirm the circuit court's judgment sustaining the demurrer and dismissing the amended complaint and petition for accounting.

### II. The circuit court did not abuse its discretion by denying appellants' request for leave to amend the complaint a second time.

"On appeal, review of the trial court's decision to grant or deny a motion to amend is limited to the question whether the trial judge abused his discretion." *Lucas v. Woody*, 287 Va. 354, 363 (2014) (quoting *Hetland v. Worcester Mutual Ins. Co.*, 231 Va. 44, 46 (1986)). The question of whether to grant leave to amend a pleading "rests in the sound discretion of the [circuit] court." *Roberts v. Roberts*, 223 Va. 736, 742 (1982). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).

Appellants contend that the circuit court abused its discretion by denying leave to amend because (1) relevant facts came to light after the amended complaint was filed, (2) the circuit court unfairly penalized appellants for delays in the proceedings, and (3) permitting leave would not have prejudiced appellees. We disagree.

Appellants asked to amend their complaint to include additional facts pertaining to Dan's practice of regularly seeking the siblings' input on decisions related to the business arrangement.

Appellees argued that such an amendment would be legally futile. In denying leave to amend, the circuit court found that the proffered amendment would be futile, stating that appellants are "still nowhere near setting forth a complaint." Moreover, the court additionally noted that the present matter had been "pending now for four years" and that the complaint had already been amended once before.

These findings regarding timeliness and prior amendment are within the sound discretion of the circuit court, so we defer to its ruling. "In evaluating whether a trial court abused its discretion, 'we do not substitute our judgment for that of the trial court.'" *AME Fin. Corp. v. Kiritsis*, 281 Va. 384, 393 (2011) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)). Furthermore, our Supreme Court has established that both timeliness and legal futility are appropriate considerations in determining whether to grant leave to amend.[6] *See Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 67 (2007); *see also Doe v. Baker*, 299 Va. 628, 656-57 (2021) (denying leave to amend where the appellant had already amended her complaint once, the matter had been pending for five years, and the additional proffered facts would not have affected the circuit court's analysis of a demurrer). Because we find that the circuit court did not abuse its discretion by denying leave to amend, we affirm the circuit court's judgment.

*III. Appellants' discovery challenge is waived under Rule 5A:18.*

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. When a party fails to

---

[6] Appellants rely on the holdings in *Mortarino v. Consultant Engineering Services., Inc.*, 251 Va. 289 (1996), and *Kole v. City of Chesapeake*, 247 Va. 51, 57 (1994), to argue that the circuit court should grant leave to amend where the record shows no prejudice to the opposing party. In both of those cases, however, timeliness was not a concern. In *Mortarino*, the Court specifically noted that the appellant had not previously amended his motion for judgment in overruling the circuit court's denial of leave to amend the motion. 251 Va. at 296.

obtain a ruling on a matter presented to a trial court, there is nothing for this Court to review on appeal. *Fisher v. Commonwealth*, 16 Va. App. 447, 454 (1993) (holding that the appellant had not preserved his argument that the circuit court had not timely provided a jury list to him because he did not obtain a ruling from the circuit court on this issue).

Appellants contend that the circuit court erred by not permitting discovery to proceed before ruling on the demurrers and request for leave to amend. But appellants never obtained a ruling from the circuit court on the discovery dispute. To the contrary, the circuit court expressly declined to rule on any of the discovery matters and stated that it would not address the issue. Thus, appellants' arguments concerning discovery are waived. *See* Rule 5A:18.

CONCLUSION

We find that the circuit court properly sustained the demurrers and dismissed the amended complaint and petition. We additionally find that the circuit court did not abuse its discretion by denying appellants' request for leave to amend the complaint for a second time. Therefore, we affirm the circuit court's judgment.

*Affirmed.*